McGOWAN, Appellant, *v.* NELSON et al., Respondents.

(No. 2,436.)

(Submitted October 9, 1907. Decided October 25, 1907.)

[92 Pac. 40.]

| 36 | 67 |
| 37 | 446 |
| d38 | 155 |
| 38 | 156 |
| d38 | 363 |
| 36 | 67 |
| f39 | 62 |
| 39 | 349 |

*Personal Injuries—Master and Servant—Evidence—Sufficiency—Nonsuit—Presumptions—Res Ipsa Loquitur.*

Personal Injuries—Master and Servant—Evidence—Sufficiency—Nonsuit.

1. Where the evidence introduced by plaintiff, in an action for damages for personal injuries claimed to have been caused by the negligence of his employers, showed that the accident occurred while he was engaged as a carpenter on the lower floor of a building in course of construction, by reason of two planks falling upon him from an upper story, but failed to disclose how they happened to fall—whether on account of the negligence of defendants in allowing them to be improperly piled, or by reason of the negligence of some fellow-servant in handling them—nonsuit was properly granted.

Same—Evidence—Failure to Call Witnesses—Presumptions.

2. The failure of plaintiff in the action set out in the foregoing paragraph to call as witnesses in his behalf several of his coemployees—presumably fellow-servants—who were present at the time and place of the injury, raised the presumption that their testimony would have been unfavorable to him.

Same—*Res Ipsa Loquitur*—When Doctrine will not Apply.

3. The doctrine of *res ipsa loquitur* rests upon the presumption that, in view of the surrounding circumstances, the accident to plaintiff would not have happened if defendant had exercised ordinary care; therefore, where the evidence was silent as to the cause of the accident and the attendant circumstances left room for the conclusion that the injury complained of might have occurred by reason of the negligence of plaintiff's fellow-servants, the doctrine cannot be invoked.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

ACTION by James P. McGowan against George Nelson and Hans Pederson. From a judgment of nonsuit plaintiff appeals. Affirmed.

*Messrs. Maury & Hogevoll,* for Appellant.

Only such risks and dangers which an employee might observe or could observe are assumed. (*McCabe* v. *Montana C. Ry. Co.,* 30 Mont. 323, 76 Pac. 701.) A case such as this should not be taken away from the jury unless only one conclusion could be drawn, and that conclusion would be, in our own case, that plaintiff had assumed the risk. (*Cain* v. *Gold Mt. Min. Co.,* 27 Mont. 527, 71 Pac. 1004; *Michener* v. *Fransham,* 29 Mont. 240, 74 Pac. 448; *Ball* v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871; *Nord* v. *B. & M. Con. C. & S. M. Co.,* 30 Mont. 48, 75 Pac. 681; *Soyer* v. *Great Falls W. Co.,* 15 Mont. 1, 37 Pac. 838.)

A servant does not assume even the negligence of his fellow-servants, except the servant is in such a position that he can protect himself from the negligence of the fellow-servant. (*Wren* v. *Golden T. Min. Co.,* 24 Wash. 261, 64 Pac. 174.)

The very fact that defendants have to plead contributory negligence and assumption of risk implies that they have to prove it, and, therefore, when a *prima facie* case is made out, if they do not prove what they have pleaded, the judgment should be for the plaintiff. (Labatt on Master and Servant, sec. 1669; *Freeman* v. *Glens Falls P. M. Co.,* 61 Hun, 125, 15 N. Y. Supp. 657.)

If one person has placed objects in such a position that they are liable to fall on another person, the doctrine of *res ipsa loquitur* is applicable. (Labatt on Master and Servant, sec. 2303.)

*Messrs. Sanders & Sanders,* for Respondents.

A building while in course of construction undergoes constant changes and passes through successive temporary conditions,

many of which from the very necessity of construction must be dangerous, and hence momentarily unsafe places wherein the servant must work must of necessity exist. The rule applicable to such a case is that the law does not impose upon a master the duty of furnishing a reasonably safe place for the servant to work in, at every moment of his work. (*Richardson* v. *Anglo-American Prov. Co.*, 72 Ill. App. 77; *Galow* v. *Chicago etc. Ry. Co.*, 131 Fed. 242, 65 C. C. A. 507; *Armour* v. *Hahn*, 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440; *Armour & Co.* v. *Dumas* (Tex. Civ. App.), 95 S. W. 710; *Fournier* v. *Pike*, 128 Fed. 991; Labatt on Master and Servant, secs. 587, 588, 612a.) In such cases the giving of the usual instruction that a master must use reasonable care to furnish a reasonably safe place is error. (*Fallon* v. *Mertz*, 110 App. Div. 775, 97 N. Y. Supp. 417.)

The doctrine of *res ipsa loquitur* does not dispense with the rule that the party who alleges negligence must prove it. It merely determines the mode of proving it. (*Baltimore & Ohio R. R. Co.* v. *Greer*, 103 Ill. App. 448.) The mere happening of an accident is no presumption of negligence on the part of defendant. (*Bahr* v. *Lombard Co.*, 53 N. J. L. 233, 21 Atl. 190, 23 Atl. 167; *Davidson* v. *Davidson*, 46 Minn. 117, 48 N. W. 560; *Robinson* v. *Charles Wright & Co.*, 94 Mich. 283, 53 N. W. 938.) In the absence of affirmative and positive proof of negligence, the simple fact of an accident and injury would rather be attributable presumptively to misadventure, inevitable fate and other causes for which defendant would not be liable. (*Schultz* v. *Pacific etc. Co.*, 36 Mo. 13; *Nolan* v. *Schikle*, 3 Mo. App. 304; *Mitchell* v. *Chicago etc.*, 51 Mich. 236, 47 Am. Rep. 566, 16 N. W. 388; *McGrell* v. *Buffalo etc.*, 153 N. Y. 265, 47 N. E. 305; *Faris* v. *Hoberg*, 134 Ind. 269, 39 Am. St. Rep. 261, 33 N. E. 1028.) Before the doctrine can be invoked, the evidence must show that there is no other equally proximate, apparent cause of the accident besides that for which defendant is liable. (8 Ency. of Ev. 874 (2); *Alexander* v. *P. W. Co.*, 201 Pa. St. 252, 50 Atl. 991, 993; *Reese* v. *Clark*, 146 Pa. St. 465, 23 Atl. 246; *Hawthorne* v. *Salt Co.*, 10 Pa. Co. Ct. Rep. 77; *Wojei-*

*chowski* v. *Refining Co.,* 177 Pa. St. 57, 35 Atl. 596; *Zaliniger* v. *Torpedo Co.,* 190 Pa. St. 350, 42 Atl. 707; *Snodgrass* v. *Steel Co.,* 173 Pa. St. 228, 33 Atl. 1104; *Shafer* v. *Lacock,* 168 Pa. St. 497, 32 Atl. 44, 29 L. R. A. 254; *East End Oil Co.* v. *P. F. Co.,* 190 Pa. St. 350, 42 Atl. 707, 708; *Redmond* v. *Lumber Co.,* 96 Mich. 545, 55 N. W. 1004, and cases in opinion; *Soderman* v. *Kemp,* 145 N. Y. 427, 40 N. E. 212; *Allen* v. *K. C. Mills,* 27 R. I. 89, 60 Atl. 770, 773; *Redmond* v. *D. L. Co.,* 212 Pa. St. 54, 61 Atl. 572; *Jack* v. *McCabe,* 56 App. Div. 378, 67 N. Y. Supp. 810; *Searles* v. *Railway Co.,* 101 N. Y. 661, 5 N. E. 66; *Taylor* v. *City of Yonkers,* 105 N. Y. 202, 59 Am. Rep. 492, 11 N. E. 642; *Griffin* v. *Manice,* 36 Misc. Rep. 364, 73 N. Y. Supp. 563 (overruling authorities cited by appellant in his brief from the N. Y. Supp.); *Goransson* v. *R. C. Mfg. Co.,* 186 Mo. 300, 85 S. W. 339; *Shore* v. *A. B. Co. of N. Y.* (Mo.), 86 S. W. 907; *Purcell* v. *Tennant Shoe Co.,* 187 Mo. 276, 86 S. W. 121; *Cothron* v. *C. P. Co.,* 98 Mo. App. 343, 73 S. W. 279; *O'Connor* v. *C. R. I. & P. Ry. Co.,* 129 Iowa, 636, 106 N. W. 161; *Strassburger* v. *Vogel,* 103 Md. 85, 63 Atl. 202; *Duhme* v. *H. A. P. Co.,* 184 N. Y. 404, 112 Am. St. Rep. 615, 77 N. E. 386; *Hanson* v. *S. L. Co.,* 31 Wash. 604, 72 Pac. 457; *Texas & Pac. Ry. Co.* v. *Barret,* 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136; *Carnegie Steel Co.* v. *Byers,* 149 Fed. 667, 673; *O'Connor* v. *Railway Co.,* 83 Iowa, 105, 48 N. W. 1002; *Brownfield* v. *Railway Co.,* 107 Iowa, 254, 77 N. W. 1038; *Brymer* v. *Railway Co.,* 90 Cal. 496, 27 Pac. 371; *Huff* v. *Austin,* 46 Ohio, 386, 15 Am. St. Rep. 613, 21 N. E. 864; *Wormell* v. *Railway Co.,* 79 Me. 397, 1 Am. St. Rep. 321, 10 Atl. 49; *Grant* v. *Railway Co.,* 133 N. Y. 657, 31 N. E. 220; *Northern Pac. Ry. Co.* v. *Dixon,* 139 Fed. 740, 71 C. C. A. 555; *Pieschel* v. *Miner,* 30 Misc. Rep. 301, 63 N. Y. Supp. 508; *Peirce* v. *Kile,* 80 Fed. 865, 26 C. C. A. 201; *Breen* v. *St. L. C. Co.,* 50 Mo. App. 202; *Early* v. *Ry. Co.,* 66 Mich. 349, 33 N. W. 813; *Quincy M. Co.* v. *Kitts,* 42 Mich. 34, 3 N. W. 240; *The France,* 59 Fed. 479, 8 C. C. A. 185.)

MR. JUSTICE SMITH delivered the opinion of the court.

This action was begun in the district court of Silver Bow county to recover of the defendants the sum of $5,000 damages, alleged to have been sustained by the plaintiff by reason of an injury received by him while in the employ of the defendants.

The charging part of the complaint is as follows: ''That it was the duty of his (plaintiff's) master, defendants, Nelson. and Pederson to use reasonable diligence and care to the end that this plaintiff have a safe place to work. That disregarding the said duty the defendants negligently allowed to remain piled, and caused to be piled, about twenty (20) feet above where plaintiff was working and out of sight of the plaintiff, a large pile of loose plank so negligently piled as to be in a condition of unstable equilibrium and in a condition of such equilibrium that the slightest jar of workmen walking by the said pile would overturn it, and so that the slightest wind would overturn the said pile of plank. That there was some jar occasioned by some means unknown to plaintiff, and the said pile of plank fell over on and upon the said plaintiff, through the negligence of the defendants, while the plaintiff was working underneath the said pile of plank, and while the plaintiff was exercising all care on his part. That one of the said planks from the said pile, being about twelve feet long, two inches thick, and eight inches wide, through the said negligence of the defendants in piling the same, as aforesaid, fell from the said pile, a distance of twenty (20) feet, and thus the defendants did strike the plaintiff with the said plank with great force and dislocated the right scapula in plaintiff's shoulder and injured plaintiff's hand and permanently injured plaintiff to his damage in the sum of five thousand dollars ($5,000), no part of which has ever been paid.''

The answer puts in issue the material allegations of the complaint and pleads affirmatively contributory negligence on the part of the plaintiff and assumption of risk.

The plaintiff's testimony was: That on the fifteenth day of June, 1906, he was in the employ of the defendants, carrying

lumber up from the second basement of what was called the "Symons Building," in the city of Butte, and handing it up to the man on the floor above; that on that day he was struck on the shoulder with a plank, which knocked him down, broke his shoulder, and hurt him in the back of the neck. He says: "I happened to stand in that particular place where I was hurt because there was no other place to stand except right over the hole where we were putting the lumber up. I should judge the lumber was going about twenty feet above me. I hoisted it up to the first floor, and then another man took it and hoisted it to another floor again. The place where the lumber was being piled was not in sight of me. I could not see it. My back was this way, and that kept me from looking up where it was. Three planks came down. They came right down in a bunch. One hit me—maybe two—and it knocked me out, and they carried me down to the platform and put me in a wheelbarrow. I have not been able to do anything since then except watching. My shoulder has prevented me from working. The planks came from the second floor from where I was, the second floor above me. I expected that these planks were to be used as floor joists on that second floor above where I was. As to whether I could see plank lying along upon the floor, I never looked above. I don't think I could have seen that there were these plank lying across the floor beams or girders if I had looked. There was a hole there, and these plank were piled along there. I could not see that lumber piled there. I never looked at the floor above. I was very busy shoving lumber up above me. I don't see how I could have seen that condition of the lumber above if I had looked. I expected that these planks were being taken up there for floor joists. I did not know where. It is a big building. I should judge three planks came down, and some of them hit my shoulder; one hit me, I know that. It knocked me out. I stayed there for maybe three-quarters of an hour after being struck; then I walked home. I was in the basement, and I went from there to Nelson's office and from there home. I went to Mr. Nelson's office for my coat.

At that time I said a carpenter had dropped some plank on me; I said that somebody dropped a plank on me. I told Mr. Nelson and everybody that there was a plank dropped on me. It must have been a carpenter that dropped it, because he fired the carpenter then and there. I said somebody handling lumber above dropped a plank on me; I suppose it was a carpenter.''

Thomas Frazer testified for the plaintiff: ''I saw something happen there on that day to Mr. McGowan. He was hurt. A plank struck him. A plank came down through the upper floor. I was standing about fifteen feet away from McGowan when that plank came down. I was not on a level with him. He was on the station, and I was below him. I think two planks came down at that time. I am not certain how many planks came down. I should judge the plank was about twelve feet long, two by eight inches. I don't know what distance it fell. They fell two floors. I could not say the number of feet. The floor right above McGowan was the place he was passing the plank through. The floor right over him had been laid. They were working on the second floor above him. All of it had not been laid.''

James Burns testified for the plaintiff: ''There was a manhole in the floor immediately above McGowan, right over his head. He was passing timbers up through a manhole. The manhole was six or eight feet square. The floor immediately above McGowan had been laid. It was closed. The second floor above him was just a skeleton. They had started to put in their timbers there. I heard a holler when McGowan was hurt, and as I turned around this plank was falling down this hole where McGowan was working. The plank was falling from the skeleton that they were erecting for the next floor. I could not swear as to how it happened to fall. I looked up that way, and I saw some men standing right immediately where the plank was falling from. I do not know how many planks fell. When I looked up and saw the men they were standing up. I did not notice their arms. They were standing pretty near directly over the manhole—not quite, a little north. There was

some plank there still that did not fall. They were putting the planks in bunches of 12 to 14, which would cover a span. That was the regular way, and then they would put up the next span between the pillars. They were piling them at every span. They were in piles sometimes two feet thick. When I heard that outcry I could not tell exactly how many men exactly were at the top of the shaft there. There were people supposed to be backing the timbers away from where McGowan put the timbers up, and there was a gang stationed above so they could take them out to the floor. They piled it out on the floor that was finished. Immediately at the top of this manhole the floor was cemented over, and they were piling the planks on that, on the floor where the fall came from. I saw the plank while it was still falling. I looked up as soon as I heard the holler. As soon as the plank went by I looked up. I do not know the two men standing at the top of that shaft. I did not see either of those two men have hold of either of those two planks which fell. I do not know in what position the arms of these men standing at the top of the manway were with reference to those planks just after the planks passed me when I looked up, for the simple reason that when I saw the plank fall I ran over to the manway. I know there were men working there. The men said nothing, only hollered." On cross-examination the witness testified that he did not know how the planks happened to fall; also, that he did not know when the lumber that fell was piled above, and that the men standing around it were carpenters.

John Bohrer testified for the plaintiff: "I do not know where these planks came from; how close to the manway, the ones that fell." He further testified that the manhole had no frame around it. "The concrete floor distinguished the manhole from the entire space. There was not a concrete floor around it. They were putting the girders around and left the manhole. They were building the manway up the way they were going with their floors. It had not been built, just the uprights and the girders. The girders were from one set of the manway to

the other.  The manway was marked out by a square of girders and timbers.''  The witness did not notice which way the planks fell, and did not know whether they fell through the aperture of the manway or not.  The witness Bohrer further testified, on being recalled: That there were two men on the floor, two carpenters, close to the end of the manhole, ''working close to where the planks fell.  They were close to this pile of planks west of the manhole, and were putting those two by eight inch by twelve planks down.  They were nailing the cross-pieces down between the girders, lengthwise of the pile of planks.''  But he could not tell whether they were taking their planks from the pile or not.

At the conclusion of plaintiff's testimony, of which the foregoing is a summary, the defendant moved the court to enter an order of nonsuit, for the reason, among others, that the evidence offered and introduced by the plaintiff did not support the allegations of the complaint.  This motion was granted, and from a judgment entered in favor of the defendants, the plaintiff appeals.

From the foregoing statement of plaintiff's evidence, it will be seen that no testimony was offered showing how the accident occurred.  The planks fell, but there was no testimony as to how they happened to fall—whether by reason of the negligence of the defendants in allowing them to be improperly piled or piled in an unsafe place, or in an unsafe or dangerous manner, or by reason of the negligence of some fellow-servant of the plaintiff in handling the planks.  This being the case, this cause comes directly within the rule laid down by this court in the cases of *Howie* v. *California Brewery Co.*, 35 Mont. 264, 88 Pac. 1007, and *Olsen* v. *Montana Ore Pur. Co.*, 35 Mont. 400, 89 Pac. 731.

The testimony of plaintiff's witnesses shows that several co-employees of plaintiff, presumably fellow-servants, were at the place on the upper floor from which the planks fell.  Why were these men not called as witnesses by the plaintiff?  As they were not called, the presumption arises that their testimony would

have been unfavorable to his cause. In the case of *The Joseph B. Thomas* (D. C.), 81 Fed. 578, cited by appellant, this rule of presumption was invoked.

The doctrine of *res ipsa loquitur* does not apply to this case, for the reason that the thing does not speak for itself. There is testimony, of course, that the plank fell, but why it fell, by what agency, or from what cause, does not appear. Under these circumstances, it is impossible to apply the rule contended for by the appellant to this case.

The rule involved in the doctrine *res ipsa loquitur* is laid down in the case of *Hardesty* v. *Largey Lumber Co.*, 34 Mont. 151, 86 Pac. 29, as follows: "Where the thing which causes the injury is shown to be under the management and control of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have such management and control use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from the want of ordinary care by the defendant. Under such circumstances, proof of the happening of the event raises a presumption of the defendant's negligence, and casts upon the defendant the burden of showing that ordinary care was exercised."

It will be seen that this rule rests upon presumption; that is, that in view of the surrounding circumstances the accident would not have happened, had the defendant used ordinary care. When the surrounding circumstances leave room for a different presumption, as in this case, that the injury occurred, or may have occurred, by reason of the negligence of fellow-servants, the reason of the rule fails, and the doctrine *res ipsa loquitur* cannot be invoked.

The judgment of the district court of Silver Bow county is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.