STATE EX REL. LAMEY, RESPONDENT, *v.* YOUNG, APPELLANT.

(No. 5,636.)

(Submitted February 16, 1925. Decided March 2, 1925.)

[234 Pac. 248.]

*Intoxicating Liquors — Nuisances — Abatement — Landlord and Tenant — Evidence — Reputation of Premises — Judgment — Sufficiency—Burden of Proof.*

Intoxicating Liquors—Nuisances—Abatement—Proceedings Civil in Nature—Proof—Preponderance of Evidence Sufficient.
1. The action to abate premises as a common nuisance is civil in its nature; hence the burden resting upon the state is discharged by proof of the material allegations of the complaint by a preponderance of the evidence.

Same—General Reputation of Premises—Evidence—Admissibility.
2. Evidence of the general reputation of a building held under lease and charged to constitute a common nuisance as one where intoxicating liquor was kept and sold and gambling permitted is admissible as tending to prove knowledge on the part of the defendant owner, on the theory that that which is generally known in the community should be known to him.

Same—Defense Available.
3. *Quaere:* In an action against the owner of premises to have them abated as a common nuisance, may the accused rely on the defense that on learning of violations of the liquor laws by his tenant he took steps to abate the nuisance and prevent further violations?

Same—Landlord and Tenant—Knowledge of Nuisance—Duty of Landlord.
4. An owner of a building formerly used for illegal purposes and equipped with the necessary paraphernalia for a continuation thereof is required to use greater care in the selection of his tenants than would be the owner of premises never used for such purpose; he is chargeable with knowledge concerning the char-

[72 Mont. 408.]

acter of uses to which the property is put, and may not close his eyes to the obvious and thus permit a nuisance to exist.

Same—Nuisances—Abatement—Judgment—Sufficiency.

5. Since "abatement" of a common nuisance calls for the doing away of the nuisance, and to enjoin or suppress it is tantamount to abatement, the fact that a judgment in such a proceeding merely ordered that hereafter the keeping of liquor and the conducting of gambling games be prohibited therein and the building closed for one year, did not render it insufficient on the alleged ground that it contained no provision ordering the nuisance abated.

Same—Closing of Premises as a Whole—When Judgment Proper.

6. Where the premises sought to be abated as a common nuisance consisted of a main hotel building and other minor ones, and the evidence was sufficient to show that the operations carried on could be effectively done away with only by closing all thereof, it appearing that numerous convictions of infractions of the law had been had without avail, the court was warranted in closing the entire premises.

Same—Closing of Leased Premises—Judgment Binding on Defendant Landlord—Rights of Tenant not Party.

7. Where the court had jurisdiction of the subject matter of an abatement action and of the owner of the premises, its judgment was valid as to him irrespective of its effect as to a tenant, who was not a party to the action and who alone could raise the question whether his constitutional rights had been violated by the order closing the building for one year.

Judgments—Absence of Others, Even Though Necessary Parties, Does not Affect Jurisdiction to Render Judgment as to Party Properly Before Court.

8. Where the court had jurisdiction of defendant (appellant) and the subject matter of the action, the absence of other parties, even though necessary to a complete adjudication, does not affect the binding force of the judgment as to him.

*Appeal from District Court, Hill County; Charles A. Rose, Judge.*

PROCEEDING by the State of Montana, on the relation of A. F. Lamey, as County Attorney of Hill County, against C. W. Young. From a judgment declaring the premises of defendant a nuisance and enjoining maintenance thereof, defendant appeals. Affirmed.

*Mr. J. P. Donnelly* and *Mr. Louis P. Donovan,* for Appellant, submitted a brief; *Mr. Donovan* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, *Mr. I. W. Choate,* Assistant Attorney General, and *Mr. A. F. Lamey,* County

Attorney of Hill County, submitted a brief; *Mr. Choate* argued the cause orally.*

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Proceeding by the state, on the relation of the county attorney of Hill county, against C. W. Young to have certain premises declared a common nuisance and a continuance thereof enjoined.

The petition contains two counts; each alleges that the appellant is the owner of the premises, consisting of a main building, known as the Montana Hotel or the "Honkey Tonk," some thirty "cribs" and a "parlor-house," and that the premises were formerly used and occupied, in their entirety, as a place where intoxicating liquors were kept and sold, gambling games conducted and prostitution permitted and practiced, and that they are now so used.

The specific charge contained in the first count is that between the fifth day of July, 1923, and the ninth day of February, 1924, the premises, and the whole thereof, were used as a place where intoxicating liquors were kept and sold contrary to law; that of the second, that between the fifteenth day of July, 1923, and the ninth day of February, 1924, such premises were used as a place where gambling was conducted contrary to law.

Each count alleges that the specific acts complained of were committed with the knowledge, connivance and consent of the owner, this appellant.

On final hearing the court found that all of the material allegations of the complaint were true, that the premises constituted a common nuisance and should be abated and made the specific finding: "That the defendant knew, and had reason to believe, that said place, structure, and building was, between the dates aforesaid, being occupied and used for the unlawful sale and keeping of intoxicating liquor, and that gambling was being conducted on and was occurring in

said building, and that the said defendant suffered the same to be so occupied and used.''

On its findings and conclusions of law the court entered its judgment declaring the premises a nuisance, and ordering that no intoxicating liquor be thereafter kept, stored, bartered or sold therein, and that no gambling thereafter occur or be carried on therein. Upon its judgment the court then ordered that the premises, and all thereof, be closed for the period of one year, unless sooner released by order of court, with directions for the enforcement of the order, in accordance with the statute. The appeal is from the judgment.

1. Appellant's first contention is that the evidence is insufficient to warrant the court's finding as to knowledge of and sufferance by appellant.

The evidence discloses the fact that the buildings described, including the whole of the main building, are relics of the time when the sale of intoxicating liquor and the maintenance of bawdy-houses and gambling-houses was permitted in public, and were used exclusively for such joint purposes prior to the time when such practices were driven from open and public exercise, and that thereafter, for some considerable length of time, such practices were there continued in defiance of the law. The ''cribs'' and ''parlor-house'' were abated in the year 1920, and, though they are included in this proceeding, the only part of the premises sought to be saved from the operation of the court's order is the main building, a three-storied frame structure. The first floor of the main building contains a barroom, still fitted up with back and front bar and wine-rooms; a concert hall, with stage, and surrounded by curtained booths with tables and chairs, and a Chinese restaurant in the rear. The second floor is divided into about fifteen rooms, formerly used for the housing of immoral women, but during the period named in the petition abandoned. The third floor also is divided into about fifteen rooms, seven or eight of which were, during said period, closed and locked, five used for sleeping or other purposes, and two fitted up and used

for conducting gambling, principally the Chinese game of "fan-tan." The gambling-rooms are fitted with a buzzer system, operated from a push-button under the counter in the restaurant, and from the restaurant a stairway leads to the upper stories, with a door at the bottom, kept locked and barred, and in which there are "peep-holes."

There is no question, and in fact no dispute, but that the premises were, during the period named, used for the purposes declared in the findings of the court, and from the evidence it might well have been found that they were still used for the purpose of prostitution. But appellant asserts that he knew nothing of these violations of the law, with the exception of certain violations by two tenants named, and that, on learning of the first, he "fired" the tenant, and in the second he refused to renew the lease and, as counsel states it in his brief, "took affirmative action to prevent the use of the premises in violation of the law." Neither of these assertions, as we view the evidence, is justified.

This is a civil action, and therefore the burden resting upon [1] the state is proof of the material allegations of the petition by a preponderance of the evidence only. (*State ex rel. Bourquin* v. *Morris,* 67 Mont. 40, 214 Pac. 332.)

The record discloses that in January, 1920, in an action against this appellant, Joe Lucier, W. A. Murdock and others, it was declared that intoxicating liquors had been unlawfully sold in the main building; certain portions of the premises in question, aside from the main building, were abated. Later certain furniture was sold by the sheriff under order of the court; Joe Lucier bid it in and sent the sheriff to Murdock, bookkeeper and agent for Young in the collection of rents, for his check. In December, 1922, Joe Lucier was convicted of maintaining a liquor nuisance on the premises; this is the man Young asserts he "fired" on learning that he had committed the offense, but on cross-examination he stated that he refused to renew his lease when it expired.

On July 1, 1923, Young leased the premises, with the exception of the restaurant and five rooms on the third floor, to one Howard, and from the record it is fair to assume that Lucier continued in possession up to that time. In September, 1923, Howard pleaded guilty to the maintenance of a liquor nuisance on the premises, which fact was also known to Young. The Howard lease provided for a forfeiture in case the law was violated by the tenant, yet Young made no attempt to oust Howard, contenting himself with the statement that he "refused to renew the lease." That lease was in effect at the time of the commencement of this action and at the times of the numerous violations of the law proved on the hearing as having been committed during the period alleged in the petition, and up to a week prior to the date of the hearing.

On January 15, 1924, on a search-warrant, the sheriff seized a large quantity of liquor on the premises and arrested two men there found, who immediately requested that Young be sent for and, when he arrived, Young agreed to become responsible for the men. Clearly, appellant knew of that violation.

In addition to the several violations brought home to the [2] knowledge of appellant, as well as many that were not, the general reputation of the place as one where intoxicating liquor was kept and sold and gambling carried on was established.

(a) Appellant contends that the evidence regarding reputation did not apply to the period in question.

The sheriff was asked: "Do you know what the general reputation was between the 15th of July, 1923, and  *  *  * the 9th of February, 1924, of the Honkey Tonk of the Montana Concert Hall, in this community? A. I do. Q. What was that reputation? A. It has a reputation of having intoxicating liquors sold, and gambling was carried on." He was then asked as to the reputation at a subsequent date. While the answer was not couched in the best form and, on its face, taken alone, refers to the date of the hearing, we think it may

fairly be said that the witness understood the question, and that his answer covered the period stated in the question.

Evidence of the general reputation of premises tends directly to prove knowledge on the part of the owner, for that which is generally known in the community should be known to the person or persons interested in and responsible for those premises. Such evidence is admissible in a case of this nature. (*State* v. *Mercier,* 70 Mont. 333, 225 Pac. 802.)

(b) Appellant asserts that on learning of violations of the [3] liquor laws on the premises he took steps to abate the nuisance and to prevent further violations thereon. The question as to whether such a defense is available in a case of this nature is expressly reserved, as its determination is not necessary to a decision, for the reason that the action taken by appellant consisted merely in a refusal to renew leases on their expiration, permitting the delinquent tenants to continue in possession until such expirations in each case, a period of months. Such a showing falls far short of establishing a defense, if available. The case was tried on the theory of the necessity of bringing home to appellant knowledge of the use to which the premises were put. The evidence warrants the finding quoted.

From the nature of the place itself and its former use, [4] containing, as it did, all the paraphernalia for the commission of the crimes of prostitution, gambling and sale of intoxicating liquor, the owner was chargeable with knowledge of the likelihood that these crimes would be committed therein if the place was kept open; that those formerly engaged in such practices, and now seeking to evade the law, would be more apt to seek a lease on the premises than would law-abiding citizens seeking a place for the operation of a legitimate business. He was called upon by these circumstances to use greater care in the selection of tenants and more circumspection in supervision of the business there conducted than would be the owner of a building never used for illegal and immoral practices. Yet, while he continued to lease the

premises and receive monthly rentals therefor, resided in the
city where the premises were located and spent considerable of
his time there, and, by his own admissions, often visited an
adjoining building where Murdock, his bookkeeper and agent,
kept an office in which Young at least had an interest, he
sought to make it appear that he had visited the main building
but two or three times in a year and knew nothing of what
was taking place therein.

We think the responsibility resting upon appellant, under
the circumstances, is correctly stated in *Grossman* v. *United
States* (C. C. A.), 280 Fed. 683, as follows: "The landlord
cannot close his eyes to the obvious and still plead innocence.
He may be chargeable with knowledge concerning the character
of, and the uses to which, the premises are put, if the facts
reasonably warrant such a conclusion, notwithstanding, he
professes his ignorance of such uses."

Knowing of the offenses constituting his premises a nui-
sance, he did nothing to prevent their continuance, closed his
eyes to the obvious, and therefore permitted the nuisance to
exist. (*Gregg* v. *People,* 65 Colo. 390, 176 Pac. 483.)

2. Counsel for appellant contends that the order closing the
[5]   main building for one year cannot be sustained, for the
reason that the judgment contains no provisions "ordering
the nuisance to be abated."

The judgment follows closely the provisions of section 11067,
Revised Codes of 1921, which reads, in part, as follows: "On
finding that the material allegations of the petition are true,
the court shall order that no liquor shall be manufactured, sold,
bartered, or stored in such room, house.   *   *   *   And upon
judgment of the court ordering such nuisance to be abated, the
court may order that the room, house   *   *   *   shall not be
occupied or used for one year thereafter.   *   *   *   "

Counsel argued that the phrase, "upon judgment of the court
ordering such nuisance to be abated," imposed upon the court
a condition, either precedent or concurrent, to the entering of
an order closing the premises, and that no such order is con-

tained in the judgment, because it does not provide for the seizure, removal and sale of the fixtures.

It will be noted that, while section 11129, under which the second count was brought, provides for such seizure and sale, there is no such provision in section 11067, controlling as to the first count. Section 11067 does not provide, in the conjunctive form, an order enjoining illegal practices and abating the nuisance, but merely for an injunctive order, and then provides that, "upon" the order of the court abating the nuisance, the court may close the premises.

Counsel cites Chapter 5 (secs. 8642–8656), Revised Codes of 1921, on nuisances, as well as authorities, to the effect that abatement is entirely distinct from injunction, and means the destruction of the thing constituting the nuisance. Chapters 29 and 30, sections 11048–11133, Revised Codes of 1921, constitute enlargements upon the definition of nuisances (*State ex rel. Ford* v. *Young*, 54 Mont. 401, 170 Pac. 947), and declare the use to which the structures, with their fixtures and paraphernalia, are put, a nuisance; while Chapter 5 deals with anything which in itself is injurious to health, indecent or offensive to the senses, or an obstruction to the free use of property or the exercise of rights. The abatement of the latter class of nuisances necessarily calls for the destruction of the thing itself. The fixtures and furniture used in a building where liquor nuisances are committed are in themselves inoffensive; they may be used for legitimate purposes, and the abatement of the nuisance does not require their destruction any more than it does the destruction of the building in which they are housed. The "abatement" of a liquor nuisance calls for such proceedings as will do away with the nuisance, and, in this connection, to enjoin or suppress the nuisance is tantamount to "abatement," and the terms are often used as being synonymous.

Thus we find, in Corpus Juris, the statement that: "An injunction *abating* a common nuisance under the liquor law shall be broad enough to preclude the possibility of a con-

tinuing of or reopening of the nuisance. * * * '' (33 C. J., sec. 413, p. 699.)

And again, in section 400 of the same volume: ''The remedy for abating a liquor nuisance by injunction may be cumulative of other remedies.''

In *Gregg* v. *People, supra,* it is said: The court shall allow an ''injunction to prevent its continuance or recurrence and to *abate* the nuisance.''

In *Town of Nevada* v. *Hutchins,* 59 Iowa, 506, 13 N. W. 634, the court stated that to ''abate'' and to ''suppress'' are practically the same.

The judgment and order made by the trial court in the case of *State* v. *Mercier, supra,* was practically identical with the judgment and order here, and this court, referring thereto, said: ''By the judgment the sheriff was directed to *abate* the nuisance by *closing the place* and keeping it closed 'until released in the manner provided by law.' ''

We are of the opinion, therefore, that, while ordinarily injunction and abatement are distinct and separate, in section 11067 they are treated as one and the same, and that the use of the term ''abatement order'' refers to the order of the court prohibiting the use of the premises for the objectionable purposes. The order being sufficient under section 11067, it is immaterial whether or not it was sufficient under the provisions of section 11129.

3. Appellant insists that, even if the evidence was sufficient [6] to justify the closing of the premises used for the illegal purposes, and the order of abatement was included in the judgment, it was error to close the main building as a whole.

We think the evidence sufficient to warrant the finding of the court, under the allegations of the petition, that the conduct and operation of the entire building were so connected with the illicit practices there carried on that these could only be effectively done away with by the closing of the entire building. The allegations of the petition and the proof show

numerous convictions for the violation of the liquor laws therein, without avail, and therefore, all other remedies having failed, the court was amply justified in making the order. (*United States* v. *Cohen*, 268 Fed. 420.)

The statute gives the owner the right to apply for a reopening for a legitimate purpose, on giving bond. The record does not disclose that such application has been made, and we cannot·presume that the court would not grant this relief on a proper showing.

4. It is finally contended that the court was without jurisdiction to close the restaurant and rooms leased to Lee Long, without giving him his day in court. We are not called upon to determine whether any constitutional right of the tenant has been violated. The state proceeded against the premises and the owner thereof, and alleged that it was impossible to learn from those found on the premises at any time as to the management of the business there conducted. While Lee Long may have been a proper, or even a necessary, party defendant, he, and not the appellant here, should raise the question; no attempt was made to have him made a party to the action. The court had jurisdiction over the subject matter of the action and the appellant, and the judgment is valid and binding on appellant, whatever its effect as to the tenant.

As stated in *Tod* v. *Crisman*, 123 Iowa, 693, 99 N. W. 686, after quoting the rule as to necessary parties to an action: "It does not follow, however, that a decree entered in the absence of necessary parties is not binding on those before the court. The rule laid down by the authorities is that in no case does the court's jurisdiction * * * depend upon the absence of other parties, however necessary these may be to a complete adjudication."

As heretofore stated, we are not called upon to pass upon the effect of the judgment on the Lee Long lease, but in passing call attention to the fact that this lease expired a few days prior to the date of hearing and entry of judgment.

No substantial error appearing in the record, the judgment will be affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES HOLLO-WAY and STARK and HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.