STATE EX REL. NAGLE, ATTORNEY GENERAL, APPELLANT, v. NAUGHTON ET AL., RESPONDENTS.

(No. 7,536.)

(Submitted September 29, 1936. Decided November 16, 1936.)

[63 Pac. (2d) 123.]

308

*Mr. Raymond T. Nagle,* Attorney General, *Mr. Jeremiah J. Lynch* and *Mr. Oscar A. Provost,* Assistant Attorneys General, for Appellant, submitted a brief; *Mr. Provost* argued the cause orally.

*Mr. William Meyer,* for Respondents, submitted a brief and argued the cause orally.

HONORABLE FRANK P. LEIPER, District Judge, sitting in place of MR. CHIEF JUSTICE SANDS, absent on account of illness, delivered the opinion of the court.

By this action the State of Montana, through its Attorney General, seeks to abate a nuisance said to exist, an injunction restraining the continuance thereof, and an order closing the premises so used for one year and making disposition of the property used in operating such nuisance, as provided by section 11129, Revised Codes. The defendants answered. The cause was tried before the court without a jury. Plaintiff and defendants having rested, counsel for the defendants moved for a dismissal of the action, and the state moved for judgment in accordance with the prayer of the complaint. Thereafter the court made its finding as follows: "This day the motion of the defendants to dismiss the proceedings is granted. The motion of plaintiff for judgment is denied, and judgment in favor of defendants is ordered entered." Thereafter, and on December 9, judgment was entered for defendants, dismissing the action. This appeal is from that judgment.

The complaint alleges and the answer admits that Raymond T. Nagle is the Attorney General of the State of Montana; that the defendants John H. Curtis, Jr., George D. Curtis and Anna E. Lynch are the owners of that certain building

situated upon the west 38 feet of Lot 5, and the east 10½ feet of Lot 6, in Block 39, Butte Townsite, in the city of Butte, Silver Bow county, State of Montana, according to the official plat thereof, together with appurtenances situated thereon; that defendants Peter Naughton and Joseph Lyden are, and at all times in the complaint mentioned have been, the owners and proprietors of the business conducted within that part of the ground floor of such building known as the Crown Cigar Store, and numbered 110 East Park Street, Butte, Montana, and that they are the lessees of such part of that building.

The complaint alleges that the defendants Naughton and Lyden, during the months of July and August, 1935, within the building hereinabove described, conducted games commonly known as stud-poker, draw-poker, pangeni, and a game of dice, all of which were played and conducted for money, contrary to the law; that these defendants, as such lessees, within the building above mentioned, permitted a punch-board to be run and conducted, and that they ran and conducted the same for the disposal and distribution of property by chance, being prizes of divers and sundry sorts; that the building above mentioned has been, and is, used and maintained as a place where gambling of the kinds hereinbefore mentioned is and was carried on; and that these defendants will continue to use such building as a place where gambling will be carried on and conducted contrary to law. Attached to the complaint, and by reference made a part thereof, are the affidavits of John C. Richardson and William E. Nance, in which affidavits are set forth specific instances, together with the dates, upon which gambling has been carried on within such building and intoxicating liquor has been sold therein. The defendants answered denying these allegations. Trial of this cause was commenced on November 29, 1935.

This action is civil in its nature, and in order to prevail the plaintiff must prove by a preponderance of the evidence the material allegations of the complaint. By its

judgment the trial court determined that the burden had not been sustained by the plaintiff. Where, as here, a cause is tried to the court, its judgment has the same effect as the verdict of a jury. This is a suit in equity, and the rule is well established that the judgment of the trial court will not be disturbed unless the evidence preponderates against it. In a situation such as here presented, it becomes the duty of this court to review the evidence presented by the record; and if this court determines that the findings of the trial court are not sustained by a preponderance of the evidence, to set such findings and judgment aside and "make its own conclusions."

Speaking of these matters generally, this court, in the case of *Giebler* v. *Giebler*, 69 Mont. 347, 222 Pac. 436, said: "Finally, it is argued that the trial court determined in favor of the defendant the issue raised upon the question of desertion, and that this court ought not to disturb the finding. This being a suit in equity, the rule obtains that the decision of the trial court will not be disturbed unless the evidence preponderates against it. (*Kummrow* v. *Bank of Fergus County*, 66 Mont. 434, 214 Pac. 1098.) But what is to be said of a case of this character where the uncontradicted evidence establishes the plaintiff's cause of action, and where the record is barren of any suggestion that plaintiff or any of his witnesses is unworthy of belief, but notwithstanding these facts, the trial court finds against the plaintiff? Where, as in this instance, a cause is tried to the court, its decision or finding has the same effect as the verdict of a jury, and, when contrary to or not established by the evidence, will ▮ be set aside. (20 R. C. L., p. 280, sec. 62.) The rule that the trial court may not disregard uncontroverted credible evidence is fundamental. (*Haddox* v. *Northern Pac. Ry. Co.*, 43 Mont. 8, 113 Pac. 1119.) This court has not hesitated to set aside findings contrary to the preponderance of the evidence, and this we deem to be the duty imposed by our Bill of Rights (sec. 6, Art. III, Const.) Section 8805,

Revised Codes of 1921, provides: 'In equity cases, and in matters and proceedings of an equitable nature, the supreme court shall review all questions of fact arising upon the evidence presented in the record, whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, and determine the same, as well as questions of law, unless, for good cause, a new trial or the taking of further evidence in the court below be ordered.' Speaking of that statute we said: 'This court has power, and it is its duty, so far as it may, exercising a due regard for the findings of the district court, based, as they are, upon the testimony of witnesses delivered *ore tenus* in the presence of the court, to reach its own conclusions, and to declare upon the rights involved accordingly. Owing to the advantageous position of the trial court, due to the conditions just adverted to, this court will naturally hesitate to overturn findings based upon substantially conflicting evidence which would justify an inference in favor of either side of the controversy; but where the conflict is trifling or unsubstantial, or where the evidence preponderates decidedly against the finding, this court may, looking to the nature of the evidence, proceed to examine it, and make up its own conclusion.' (*Bordeaux* v. *Bordeaux*, 32 Mont. 159, 80 Pac. 6.)'' (See, also, *State ex rel. Lamey* v. *Young*, 72 Mont. 408, 234 Pac. 248; *Lasby* v. *Burgess*, 88 Mont. 49, 289 Pac. 1028; *Sylvain* v. *Page*, 84 Mont. 424, 276 Pac. 16, 63 A. L. R. 528; *Laundreville* v. *Mero*, 86 Mont. 43, 281 Pac. 749, 69 A. L. R. 416; *Shepherd & Pierson Co.* v. *Baker*, 81 Mont. 185, 262 Pac. 887.)

At the front of the room occupied by the Crown Cigar Store is a cigar counter, at which it is charged the punch-boards and dice games are operated. Back of this cigar counter, and toward the rear of the room, is a bar about 40 feet long, together with a back bar. It appears that beer is dispensed here and intoxicating liquors sold. At the rear of the building is a room about 28 by 60 feet,

in which it is charged the games of stud-poker, draw-poker and pangeni are played. In the card-room are six or seven card tables, together with some chairs, the precise number of which the evidence does not show. This room is separated from the bar by a partition, and along this partition and on the side next to the front of the room is a lunch counter.

Section 11124, Revised Codes, provides: "Every building or place used for the purpose of lewdness, assignation, or prostitution, and every building or place wherein or upon which acts of lewdness, assignation, or prostitution are held or occur, and any building wherein gambling is carried on or occurs, contrary to any of the laws of the state of Montana, or wherein any wine rooms are conducted or maintained, contrary to the laws of the state of Montana, or wherein any opium or coca leaves, their salts, derivatives, and preparations thereof are sold or given away or used contrary to the laws of the state of Montana, is a nuisance which shall be enjoined, abated and prevented as hereinafter provided, whether the same be a public or private nuisance."

We have examined the testimony very carefully. It is quite voluminous. We shall not attempt to set it forth at length. No justifiable reason exists for so doing. Suffice it to say that witnesses Nance and Richardson were employed from November 1, 1935, to the date of this trial by the Montana Liquor Control Board; that for about five months prior thereto each had been employed as an investigator for the Attorney General of this state; that each had been employed as an investigator for private persons and concerns and for the federal government for a number of years prior thereto; that each of these witnesses testified that during the months of July and August they had visited the place in question for the purpose of ascertaining whether or not gambling games were being conducted, and whether intoxicating liquor was being sold therein; that sometimes they were together in making these visits and sometimes alone; that at divers and sundry times they had purchased drinks of intoxicating

liquor in this place; that upon one occasion they purchased a pint of whiskey from defendant Lyden and paid therefor the sum of $1.50; that the bottle of liquor said to have been purchased by them was introduced in evidence; that in the rear room above mentioned draw-poker, stud-poker and pangeni were played with chips and for money; that they had each purchased chips with money and had used those chips in playing with others in poker games; that upon other visits when these two witnesses did not play any of the card games they saw many other persons playing these games, using chips therein; that they played a dice game in this room for money, and that they played the punch-boards for money.

As above stated, the affidavit of each of these witnesses was attached to and made a part of the complaint. Those affidavits recited, among other things, that these witnesses had been in this place on the 14th day of August, 1935, and recited certain occurrences that had taken place therein on that date. Upon the trial of the cause each admitted that that was not the fact; that neither of them had been in this place on August 14, but that an error had been made in the date, and that the occurrences therein related as having occurred on August 14 in fact occurred on July 14. Because of this discrepancy, and certain others which occur in the testimony of these witnesses, the very able counsel for the defendants strenuously insists that these witnesses are unworthy of belief and that they committed perjury in the making of these affidavits.

The trial court obviously adopted this theory. We think that a careful examination of all the testimony adduced does not justify such conclusion. When asked about this discrepancy in the affidavits, each of the witnesses explained that after making these investigations they reported to the office of the Attorney General and related to him the facts which they had discovered in connection with such investigations; that the office of the Attorney General then prepared the affidavits in question, and these witnesses were later called

in for the purpose of signing the same; that before signing them they had casually read the affidavits; that they had assumed that the office of the Attorney General had recorded the facts therein which they had furnished to the Attorney General's office; that there were a great many affidavits made in connection with this and similar cases; and that these witnesses did not know until about the time of the trial of this error therein. This explanation accords with the experience had by very many busy practitioners of the law.

With regard to the discrepancies appearing in the testimony of these two witnesses, other than that contained in the affidavits above mentioned, it may be observed that the witnesses were testifying without notes, that they had investigated not alone this place in question but many others, and that they had made notes of these investigations and shortly before the trial had refreshed their memories from these notes. If, in the light of these circumstances, the two witnesses in question had given testimony precisely the same in every particular, that is, if their testimony had shown that they were in a given place on the same date, and if it had shown that precisely the same things happened on that date, it might well be said that that testimony is likely to represent a carefully laid and executed plan to embroil these defendants in difficulties. That but expresses a fact well within the experience of many practitioners of the law. But as we shall presently see, there is much corroboration of the testimony of witnesses Nance and Richardson.

Witness Vidro, 27 years of age, born and raised in the city of Anaconda, attended school and graduated .from the University of Montana at Missoula; obtained a degree of Bachelor of Arts and physical education there; through these years he had been in Butte frequently; was employed by the Hanson Packing Company in the city of Butte during the year of 1932; has been for the past two months an investigator for the Montana State Liquor Board; was in the beer hall in question twice on October 23, 1935; saw men

in this back room playing draw-poker, stud-poker and pan-geni; each of the players used chips in playing these games; one of the players ran out of chips and passed a coin to the man at the head of the table, and that man gave the player some additional chips. This witness further testified that this place for at least ten years had borne the reputation of being a place where gambling was carried on; and further, that while in this place with witness Gore, they had a talk with defendant Lyden; that witness asked Lyden how business was and Lyden replied that it was pretty slow, that they were running wide open for quite a while, but found it was too risky and they stopped, and that ''we have a few short card games in the rear which I understand they are all right.''

Witness Gore testified, in substance, that he is an investigator for the Montana Liquor Control Board; that he was formerly employed by the Treasury Department of the United States government; that he is acquainted with the Crown Cigar Store; that he knows its reputation and has known it for a number of years; that it is reputed to be a place where gambling is conducted; that posted on the wall in that room he saw, a short time before the trial, a federal retail liquor dealer's license issued to P. J. Naughton and Lyden; that he had had a conversation with Lyden in the presence of witness Vidro, and in that conversation ''We got talking from that about gambling. He [Lyden] said they used to run the place wide open, used to run gambling wide open in there, but things got a little bit tight and they cut down, and they are only running short games now''; that while he was there he walked into the card-room and saw a number of men playing draw-poker and pangeni, and that these players used chips.

Witness Friar testified that he is employed by the Montana Liquor Control Board; that he is familiar with the reputation of the place in question, and its reputation is that it is a place where gambling is carried on and where intoxicating

liquor is sold by drinks. General reputation is admissible for the purpose of proving the existence of such nuisance. (Sec. 11127, Rev. Codes.)

S. A. Thewcat, a Baptist minister, who has resided in Butte for about three years; E. S. Shields, a real estate dealer, who has resided in Butte for 42 years; Mrs. T. W. Frye, a married lady, who has resided in Butte for 40 years; Mrs. W. B. Craighead, who was born and raised in Butte, but was gone from there for some years and returned about a year and a half before the trial; Mrs. T. H. Wilkinson, who has resided in Butte for 24 years; and Walter H. Balkovatz, each testified that the reputation of the Crown Cigar Store is that gambling is conducted there, and most of these persons said that it is a place where intoxicating liquors are sold.

The Montana Liquor Control Board was created by the State Liquor Control Act (Chap. 255, Rev Codes), and is composed of the Governor, the Attorney General and the Secretary of State. By that Act this board is authorized to appoint inspectors, who act under the direction of the board and perform such duties as the board may require. By virtue of such authority this board appointed witnesses Nance, Richardson, Vidro, Gore, Friar and Balkovatz as such inspectors. They are officers of this state, charged with the performance of certain duties. It is highly improbable that this board, so composed, would appoint as inspectors men who are so utterly disreputable as to be altogether unworthy of belief.

The only testimony offered by the defendants was that given by three witnesses, Joe Kane, Frank Reardon and Ed H. Osenberg. They are each business men who have resided in Butte for a considerable period of time. They each testified that they have not heard the Crown Cigar Store referred to as a place where gambling is conducted or where intoxicating liquors are sold. The last named witness conducts a business next door to that of the Crown Cigar Store. In answer to the question whether or not he knew

the reputation of the place in question, he replied: "I know the reputation, like any other saloon, beer sold and a little cards being played."

If the testimony of witness Gore, to the effect that defendant Lyden said to him that "we used to run gambling wide open in there," etc., is to be believed (and it is uncontradicted), then the Crown Cigar Store is a place where gambling was conducted. If gambling has been so conducted, then most certainly the place would have the reputation attributed to it by all of these witnesses. Some of the witnesses say that it has had such reputation for many, many years.

Subdivisions 6 and 7 of section 10672, Revised Codes, ██ provide:

"6. That evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce, and of the other to contradict; and therefore,

"7. That if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust."

This rule is founded upon reason and is the result of experience. Lord Mansfield observed that "all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted." Mr. Starkie, in his work on Evidence, volume 1, page 54, says: "The conduct of the party in omitting to produce that evidence in elucidation of the subject matter in dispute which is in his power and which rests peculiarly within his own knowledge, frequently affords occasion for presumptions against him, since it raises strong suspicion that such evidence, if adduced, would operate to his prejudice." (1 Wigmore on Evidence, secs. 285–290; *McGowan* v. *Nelson*, 36 Mont. 67, 92 Pac. 40; *United States* v. *Mammoth Oil Co.*, 14 Fed. (2d) 705, affirmed in *Mammoth*

*Oil Co.* v. *United States,* 275 U. S. 13, 48 Sup. Ct. 1, 72 L. Ed. 137; *In re Wellcome,* 23 Mont. 450, 59 Pac. 445; *Harold* v. *Toomey,* 92 Wash. 297, 158 Pac. 986.)

Commenting on subdivisions 6 and 7, above, in the case of *Michalsky* v. *Centennial Brewing Co.,* 48 Mont. 1, 134 Pac. 307, this court had under consideration the question of whether or not the trial court had properly included the above subdivisions as part of its instructions to the jury, and therein remarked: "The doctrine that 'if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory is within the power of the party, the evidence offered should be viewed with distrust' is a fundamental canon of all proof. In ·no case can it be a valid objection to it that any particular party is put by the court under the imputation of having withheld the best evidence available—that is for the jury to say. If in fact he has not, he cannot be adversely affected by the instructions; and, if he has, his is just the case for which the rule was made."

Defendants Naughton and Lyden were present at this trial, for the judgment recites: "The above entitled action coming on regularly·for hearing on Friday, the 29th day of November, 1935, plaintiff being represented by his counsel * * * and defendants Peter Naughton and Joseph Lyden being present in person, and represented by their counsel," etc. They were charged with operating a place where gambling is conducted for money. They heard witnesses so testify. They knew, better than anyone else, what the facts were. Defendant Lyden heard witness Gore relate a conversation which the witness said he had with the defendant—and yet no denial is made. The record is replete with testimony to the effect that the place in question is frequented by a great many persons who reside in and about the city of Butte, at least some of whom must have known the facts—but none of them were called as witnesses. Plaintiff's witnesses gave the names of a number of the defendants' employees with

whom many of the transactions were carried on—but none of them testified. There is but one conclusion which may be drawn from the failure to produce this testimony, namely, that the evidence, if produced, would have been detrimental to defendants' cause.

Counsel for defendants asserts that the sale of intoxicating ▮ liquor is not now made a nuisance by our statute. Under the provisions of Chapter 29 of the Penal Code, 1921, the sale of intoxicating liquor was made a nuisance, but that chapter was repealed prior to the commission of the acts herein alleged. The complaint here alleged the sale of intoxicating liquor, and there is ample evidence in support of that allegation. The complaint further alleged that by reason of the sale of intoxicating liquor the place in question became the resort of dissolute persons, etc., but the evidence is insufficient to support such allegation. The sale of intoxicating liquor is not made a nuisance by the general definition of that term (sec. 8642, Rev. Codes), nor by the Liquor Control Act of Montana (Chap. 255, Pol. Code 1935). It is notable that, while the Montana Beer Act (Chap. 254, Id.) makes the sale of beer in violation of the Act a nuisance, no such provision is contained in the Liquor Control Act. We hold that the sale of intoxicating liquor is not necessarily a nuisance and, under the evidence here adduced, is not, in itself, shown to be such.

After a careful examination of all the testimony and of the authorities cited in the very able briefs of respective counsel, we are of the opinion that the evidence herein strongly preponderates against the findings and judgment of the trial court.

The law and the evidence considered, plaintiff is entitled to have rendered and entered a judgment decreeing that the nuisance complained of has been established; directing that the same be abated, and ordering the removal of all fixtures, instruments, gambling paraphernalia and other movable property used in conducting, maintaining, aiding or abetting in the

carrying on or operation of the games of stud-poker, draw-poker, pangeni, dice and punch-board games from the premises occupied by the Crown Cigar Store, all as provided by section 11129, Rev. Codes 1935, and that all of such property shall be sold and the proceeds thereof used in the manner provided by section 11130, Revised Codes of 1935; that the premises known as the Crown Cigar Store shall be closed for one year, as provided by law; and that the defendants, their agents, servants and employees, be perpetually restrained and enjoined from using the premises in question for the operation of such nuisance.

The judgment is reversed and the cause remanded to the district court of Silver Bow county, with directions to render judgment in accordance herewith.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS and HONORABLE C. B. ELWELL, District Judge, sitting in place of MR. JUSTICE MATTHEWS, absent, concur.

Rehearing denied December 28, 1936.