STATE EX REL. BOURQUIN, RESPONDENT, v. MORRIS ET AL., APPELLANTS.

(No. 5,116.)

(Submitted April 3, 1923. Decided April 9, 1923.)

[214 Pac. 332.]

*Nuisances—Sale of Intoxicating Liquor—Prostitution—Abatement—Witnesses—Impeachment on Collateral Matter—Rule of Evidence—Preponderance of Evidence—What may Constitute.*

Nuisances—Abatement—Intoxicating Liquor—Sale—Prostitution—Statutes and Statutory Construction.

1. Sections 11124 and 11125, Revised Codes of 1921 (enacted in 1917) declare the maintenance of a house of prostitution or for wine-room purposes a nuisance and provide for its abatement. Sections 11066 and 11067 (passed in 1921) provide that buildings or

[67 Mont. 40.]

rooms where intoxicating liquor is sold are a common nuisance and for their abatement, all other Acts in conflict with their provisions being repealed. *Held,* that the latter Act is not in conflict with the former one but simply supplements it, and therefore does not supersede, it.

Witnesses—Impeachment on Collateral Matter—Rule of Admissibility of Evidence.
2. The test to be applied in determining whether testimony offered for impeachment purposes relates to a collateral matter is whether the fact sought to be shown could be shown for any purpose independently of the contradiction.

Nuisances—Abatement—Evidence of Other Previous Acts—Admissibility.
3. In an action to abate a common nuisance involving proof of violations of the liquor law and the statute prohibiting the maintenance of a house of prostitution, the rule under which in a criminal action evidence of acts other than that charged is admissible for certain purposes applies, and therefore a witness was properly permitted to testify under the rule above (par. 2) that while employed as a domestic by defendant during a period of two months immediately preceding the time alleged in the complaint, defendant had sold liquor and shared the profits of prostitution with the inmates, and that the objection that the evidence was on a collateral matter was properly overruled.

Evidence—Preponderance not Dependent on Number of Witnesses Testifying.
4. Preponderance of the evidence is not to be determined by the number of persons who testify, it may be established by the testimony of a single witness against a greater number of witnesses who testify to the contrary.

*Appeal from District Court, Silver Bow County; Wm. E. Carroll, Judge.*

PROCEEDING by the State, on the relation of George Bourquin, as County Attorney of Silver Bow County, against Mrs. P. J. Morris and others, to have premises declared a nuisance, and to have the nuisance abated. Judgment for relator, and defendants appeal from the judgment. Affirmed.

*Mr. Joseph J. Griffin,* for Appellants, submitted a brief; *Mr. Thomas J. Walker,* of Counsel, argued the cause orally.

*Mr. Wellington D. Rankin, Attorney General,* and *Mr. L. A. Foot, Assistant Attorney General,* for Respondent, submitted a brief; *Mr. Foot* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The defendants P. J. Morris and his wife occupied the second and third floors of the Vroom Block in Butte, and used the premises, ostensibly, at least, as a rooming-house. This suit was instituted by the state, on the relation of the county attorney of Silver Bow county, to have the premises declared to be a nuisance, and to have the nuisance abated.

It is charged: (1) That the premises were used as a place [1] of prostitution with the knowledge and consent of the defendants; and (2) that on the premises intoxicating liquors were kept, sold, bartered and otherwise disposed of contrary to law. The trial court found that each of the charges was sustained, and rendered and had entered a judgment which directed that the furniture and fixturès be sold and the place closed for one year. From that judgment this appeal is prosecuted.

Section 11124, Revised Codes of 1921, which declares that every building or place used for the purpose of prostitution or wherein gambling is conducted or wine-rooms are maintained is a nuisance, and section 11125, which provides the procedure for the abatement of such a nuisance, were enacted in 1917. Section 11066, which declares that every room, house or building where intoxicating liquor is manufactured, sold, kept or bartered in violation of law is a common nuisance, and section 11067, which provides the procedure for abatement, were enacted in 1921.

1. Defendants contend that the later Act supersedes and repeals the earlier statute, but the contention cannot be maintained. The Act of 1921 contains a general repealing clause which operated upon all Acts and parts of Acts in conflict with it, but there is not any conflict between these statutes.

The Act of 1917 did not define the term "nuisance," but merely enlarged the definition given in prior statutes. It did not create a new remedy, but made certain the extent of the relief obtainable. (*State ex rel. Ford* v. *Young,* 54 Mont. 401,

170 Pac. 947.) So likewise the Act of 1921 did not assume to define the term "nuisance," which is defined by section 8642, Revised Codes of 1921. It did, however, make certain that any room, house, building, boat, vehicle, structure or place where intoxicating liquor is manufactured, sold, kept or bartered in violation of law is a common nuisance, and it also made certain the relief to be had in an abatement proceeding. The later Act supplements, but does not supersede, the earlier statute.

2. Helen Finley, who was employed by the defendants as a **[2, 3]** domestic in the Vroom rooming-house from March, 1920, until some time in August of the same year, was called as a witness by plaintiff in the case in chief to testify to acts of prostitution permitted and illegal sales of intoxicating liquor made by defendants at the premises, during the period of her employment, but, upon objection by defendants, the testimony was excluded upon the theory that it tended to prove acts other than those charged in the complaint.

In the direct examination of Mrs. Morris in her own defense she was asked, "During the time that you have lived in the Vroom Block, and particularly for six months prior to the 18th day of March, 1921, did you allow any prostitution whatever in that building?" to which she replied, "No, sir." On cross-examination she was asked, "Was any liquor sold by you—intoxicating liquor—at the Vroom Block between March, 1920, and August, 1920?" Over objection she was required to answer, and replied, "No, sir." In rebuttal, Helen Finley was called, and, over objection, testified to facts and circumstances tending to prove that during the last two months of her employment at the Vroom Block prostitution was carried on there with the knowledge and consent of Mrs. Morris, who shared with the prostitutes the profits of their illicit business, and also that Mrs. Morris sold intoxicating liquors in the rooming-house. While the trial court had excluded this evidence as a part of the plaintiff's case in chief, it admitted it in rebuttal for the purpose of impeachment.

Defendants contend that in admitting the evidence the court erred, since the only effect was to contradict Mrs. Morris upon an immaterial or collateral matter, and *Bullard* v. *Smith*, 28 Mont. 387, 72 Pac. 761, is cited in support of that contention. In that case this court said: "The rule is well settled that a witness cannot be contradicted as to collateral matters brought out upon cross-examination." The court was unfortunate in selecting that form of expression, for, though the statement had the approval of some of the earlier authorities (Starkie on Evidence, p. 200), it conflicted with the statute then in force (section 3144, Code Civ. Proc. 1895). The statute now (sec. 10529, Rev. Codes 1921) provides: "Evidence must correspond with the substance of the material allegations, and be relevant to the question in dispute. Collateral questions must therefore be avoided. It is, however, within the discretion of the court to permit inquiry into a collateral fact, when such fact is directly connected with the question in dispute, and is essential to its proper determination, or when it affects the credibility of a witness."

In 2 Wigmore on Evidence, section 1003, it is said: "The common term for designating the line of exclusion is 'collateral'; no contradiction, we are told, *shall be permitted on 'collateral' matters.* But this term furnishes no real test. If it be asked what 'collateral' means, we are obliged either to define it further—in which case it is a mere epithet, not a legal test—or, to illustrate by specific examples, in which case we are left to the idiosyncrasies of individual opinion upon each instance. The test that is dictated by the principle above explained, and the only test in vogue that has the qualities of a true test—definiteness, concreteness, and ease of application—is that laid down in *Attorney General* v. *Hitchcock,* 1 Exch. 104: *Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?*" That test was approved and applied in *State* v. *Smith,* 57 Mont. 349, 359, 188 Pac. 644, is clearly correct, and is in harmony with the provision of our statute above, and with the modern

authorities.   (Greenleaf on Evidence, sec. 462; 5 Jones on Evidence, sec. 827.)

This is a civil action, but to establish the fact that defendants were maintaining a nuisance involved proof of violations of the penal statutes.   For that purpose the rule which admits evidence of other offenses is applicable here.

In the complaint it is alleged that intoxicating liquors were kept on the premises "with intent to sell, exchange, give away, barter, furnish or otherwise dispose of contrary to law."   Under that allegation evidence of unlawful sales at a time not too remote from the period covered by the complaint was admissible (*Bowers* v. *Maas,* 154 Iowa, 640, 135 N. W. 25) ; and likewise evidence tending to prove that defendant Mrs. Morris knowingly permitted her rooming-house to be used for the purpose of prostitution prior to the period covered by the complaint was admissible for the purpose of showing that the nuisance was a continuing one.   (*State* v. *Maguire,* 31 Idaho, 24, 169 Pac. 175.)   The general rule which sanctions the admissibility of this evidence is stated in *State* v. *Wyman,* 56 Mont. 600, 611, 186 Pac. 1, 4, as follows: "Evidence of other acts or declarations of the accused, of a like nature with those constituting the offense charged, is admissible for the purpose of showing the intent, guilty knowledge or motive, in corroboration of the testimony as to the offense charged, to prove the identity of the perpetrator of the crime, or to negative the idea that the particular offense complained of was the result of mere accident or mistake, or the employment of a mere loose word or phrase, or to show that the act complained of was a part of a chain or system of crimes."

The period covered by Mrs. Finley's testimony preceded immediately the period covered by the allegations of the complaint; hence we conclude that the evidence could have been admitted properly as a part of plaintiff's case in chief, and was therefore admissible for the purpose of impeachment.

3. Defendants   contend   that   the   evidence   preponderates [4]   against the trial court's findings, though they concede

that it is in sharp conflict. Measured by the number of witnesses who testified for the respective parties, the contention would be well founded; but preponderance of the evidence is not to be determined by the number of persons who testify. (Sec. 10672, Rev. Codes 1921.) In *Doane* v. *Marquisee*, 63 Mont. 166, 206 Pac. 426, this court said: "A preponderance of the evidence may be established by the testimony of a single witness against a greater number of witnesses who testify to the contrary."

No useful purpose would be served in giving even a brief summary of the evidence. We have examined it in its entirety, and cannot say that it preponderates against the findings. There is not anything inherently improbable in the story told by plaintiff's witnesses, and, since the presiding judge heard them testify and observed their demeanor, his estimate of their credibility is accepted by us.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.