No. 13427

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

THE STATE OF MONTANA,

        Plaintiff and Respondent,

    vs.

ALBERT LaVE, JR.,

        Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial
          District,
          Honorable Charles Luedke, Judge presiding.

Counsel of Record:

    For Appellant:

    Michael J. Whalen argued, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        J. Mayo Ashley argued, Assistant Attorney General,
         Helena, Montana
        Harold Hanser, County Attorney, Billings, Montana

---

        Submitted: September 26, 1977

        Decided: NOV 1 5 1977

Filed: NOV 1 5 1977

_Thomas J. Kearney_
                 Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant appeals from his conviction in the District Court, Yellowstone County, of the offense of robbery and his imprisonment in the Montana state prison.

On November 12, 1975, defendant Albert LaVe, Jr. allegedly robbed the Food Bank grocery store, located at the corner of Third Avenue South and 27th Street, Billings, Montana, of between $800 and $1,000. No arrest was made at that time. During a murder investigation in Los Angeles, California, in January 1976, defendant was arrested by Officer Jerry Marvel of the Los Angeles Police Department and held on suspicion of murder. Although the Los Angeles Police Department never charged LaVe with the murder, it was discovered while he was in custody that he was wanted in Montana on a robbery charge. LaVe was subsequently extradited to Montana to stand trial.

At LaVe's trial the prosecutor sought to introduce an "admission" by defendant concerning the robbery in Montana which defendant allegedly made to Officer Marvel while he was under arrest in California. During trial the trial judge held a hearing in his chambers to determine the admissibility of the "admission". At this hearing Officer Marvel testified that on January 13, 1976, a woman identifying herself as LaVe's mother telephoned him and asked him to talk with LaVe about a "deal" LaVe wanted to make concerning the robbery charge in Montana. In exchange for identifying the murderer in the Los Angeles case, LaVe wanted the Los Angeles police to delay returning him to Montana. Marvel testified LaVe's statements to him were:

> " * * *'I have some folks in Montana'--indicating relatives--[he] said 'They want me for some robberies up there' and he also said, 'They have me pretty good' and also that he wanted to stay in the L. A. area or jail as long as he could because he felt he had a better chance of beating the case the longer he stayed away."

LaVe's counsel objected to admitting Marvel's testimony claiming, among other things, that it would be error to mention the fact that LaVe was ever suspected of a murder. He informed the trial judge, however, that if Marvel's testimony was allowed to go before the jury, he would inquire into the circumstances under which LaVe was arrested and made the statement to Marvel. He felt those circumstances were oppressive to LaVe and he claimed they would have a substantial bearing on the weight the jury should give Marvel's testimony.

Because of defense counsel's position, the trial judge initially refused to allow any of Marvel's testimony to go before the jury. He felt the chances of connecting LaVe with the murder in Los Angeles, with which he was not charged, were too great. The prosecution later moved for a reconsideration of the trial judge's ruling. After assurances from the prosecutor that he would not associate LaVe with the Los Angeles murder, the trial judge decided to allow Marvel's testimony.

LaVe's counsel then renewed his prior objections to the admission of Marvel's testimony. In order to avoid interrupting Marvel while he was on the witness stand, defense counsel requested continuing objections to all of Marvel's testimony. The trial judge granted the defense counsel's request.

Marvel's testimony in front of the jury began:

"Q. Your name is Jerry Marvel? A. Yes, it is.

"Q. And you have just finished testifying in Chambers. A. Yes, sir.

"Q. Mr. Marvel, what is your occupation? A. Police Officer, City of Los Angeles, California.

"Q. How long have you been a police officer? A. Approximately five and a half years.

"Q. And that's all been with Los Angeles? A. Yes, an additional two years in Washington, D.C.

"Q. Okay, thank you. What are your present duties with the Los Angeles Police Department? A. Assigned to Holenbeck Investigations, homicide detail.

"Q. You're a detective then. A. Yes I am."

Marvel then testified that he had at one time spoken with defendant in the sheriff's office of the Los Angeles county jail. He went to see defendant in response to a telephone call he received that LaVe wished to speak with him. Before beginning the conversation Marvel advised LaVe of his rights. LaVe then made the statements previously quoted. Marvel did not testify, at that time, who had arrested LaVe or why he had been arrested.

On cross-examination LaVe's counsel developed the circumstances surrounding LaVe's arrest and his later conversation with Marvel. Marvel testified it was his partner and he who had arrested LaVe when he knocked at the door of a certain apartment in Los Angeles. Marvel and his partner had already arrested two other men when LaVe came to the door. A service revolver was put into LaVe's face and he was told to "freeze".

LaVe's counsel also attempted to discredit Marvel's testimony concerning defendant's admission about the Montana robbery charge by showing that Marvel was dissatisfied with LaVe's testimony in a separate preliminary hearing in Los Angeles, regarding a criminal charge against a third person. Marvel, however, did not admit that either he or the Los Angeles Police Department was dissatisfied with LaVe's testimony.

At the close of Marvel's testimony, defendant moved for a mistrial on the basis that Marvel's testimony should not have been allowed before the jury and that Marvel had made statements in the initial part of his testimony that he was cautioned against making prior to taking the stand. The trial judge denied defendant's motion.

The jury found defendant guilty of committing the offense of robbery and the trial judge sentenced him to 20 years at hard

labor in Montana state prison. Defendant appealed.

On appeal defendant raised these issues:

1. Did the District Court err in denying defendant's motion for a mistrial?

2. Was Officer Marvel's testimony before the jury prejudicial to defendant, thus denying him his right to a fair trial?

Because the two issues are related, we will discuss them together.

The decision to declare a mistrial is within the sound discretion of the trial judge. A motion for mistrial may be granted when something has occurred which is likely to affect the justice of the verdict. Curley v. Boston Herald-Traveler Corp., 314 Mass. 31, 49 N.E.2d 445, 446 (1943). The introduction of inadmissible evidence which results in harmful error to the defendant may be such an instance.

Generally, evidence of other offenses or of other similar acts at other times is inadmissible for the purpose of showing the commission of the particular criminal offense charged. State v. Taylor, 163 Mont. 106, 120, 515 P.2d 695 (1973). The reason is that the defendant is entitled to be informed of the offense charged so that he need prepare his defense only to that particular offense. Proof of other offenses subjects him to surprise and to a defense of multiple collateral or unrelated issues. State v. Jensen, 153 Mont. 233, 455 P.2d 631 (1969). This rule applies to evidence of other offenses regardless of whether defendant was actually charged with the other offense. See, State v. Tiedemann, 139 Mont. 237, 362 P.2d 529 (1961).

The general rule, however, is subject to several exceptions when such evidence becomes admissible: (1) When similar acts with the same prosecuting witness are involved; (2) when similar acts are not too remote in time; and (3) when evidence of other offenses

-5-

tends to establish a common scheme, plan or system, where such other offenses are similar to, closely connected with and not too remote from the one charged, and where they are so that the proof of one tends to establish the other. State v. Taylor, supra; State v. Jensen, supra.

Once such evidence is introduced, the party who objected to its introduction generally does not waive his objection to its erroneous admission by subsequently introducing evidence to disprove the matters testified to, to explain them, or to prove facts inconsistent with them, even though the matter he introduces is of the same kind or nature. State v. Tiedemann, supra; 89 C.J.S. Trial §661, p. 507. After the opposing party's objections are made to the testimony and overruled, that ruling becomes the law of the case to which the opposing party is required to submit. He is obligated to try the case on this ruling and cannot have the ruling reversed until judgment is entered and an appeal is made.

The fact that the opposing party conforms to the ruling and offers testimony on the theory adopted by the trial court does not indicate a purpose to waive the error. State v. Tiedemann, supra.

Evidence showing or tending to show that defendant committed another offense is prejudicial where a fair inference from the evidence is that defendant was guilty of the other crime. State v. Tiedemann, supra. The test of whether the prejudicial error requires reversal is this: Is there a reasonable possibility that the inadmissible evidence might have contributed to the conviction? State v. Langan, 151 Mont. 558, 568, 445 P.2d 565 (1968).

The ground rules under which the court allowed Marvel's testimony provided that neither side would bring out evidence associating defendant with a murder charge in Los Angeles. The statement which Marvel made on direct examination to which the defendant objected was that in his beginning testimony, Marvel stated he was assigned to "homicide detail".

-6-

This statement was not prejudicial for two reasons. First, the statement was made in response to the prosecutor's question asking Marvel what his present duties with the Los Angeles Police Department were, not what his duties were at the time he arrested defendant. That Marvel was presently assigned to homicide detail does not necessarily mean he was assigned to that same detail at the time he arrested the defendant some four months earlier.

Second, Marvel did not testify to anything on direct examination that would have connected defendant to a murder charge. He did not tell who it was who had arrested defendant or under what circumstances defendant was arrested. In explaining how he came to have a conversation with the defendant, Marvel stated only that he "had received a telephone call that Mr. LaVe wished to speak to me." It was not until cross-examination by the defense counsel that Marvel revealed it was he who had arrested defendant and what the circumstances of that arrest were. Marvel never testified to what defendant was charged with, nor why he was held.

An examination of the cases cited by defendant reveals that the alleged error in those cases were statements strongly indicating the defendants were guilty of other offenses.

In Jensen, the defendant was charged with committing a lewd and lascivious act on a child under 16 years old. The evidence sought to be introduced, which was allowed under an exception to the general rule, was testimony of other patients of the defendant-doctor that defendant had committed the same acts on them.

In Tiedemann, the defendant was charged with the attempted rape of a child under 18 years. Defendant's conviction was reversed because the prosecution testified over the defendant's objection to an admission which defendant had made to the county attorney after his arrest indicating he was involved in an earlier rape incident.

In State v. Ebel, 92 Mont. 413, 15 P.2d 233 (1932), the defendant was charged with burglarizing another's house. Evidence was introduced showing that the defendant had in his possession an unusually shaped comb similar to one allegedly taken from the victim in an earlier burglary. The defendant's conviction was reversed.

Although it is true that Marvel's testimony showed that his conversation with defendant took place while the defendant was under arrest and in police custody, none of Marvel's direct examination indicated why defendant was arrested. The jury may have assumed he was arrested for the alleged robbery in Montana. None of Marvel's testimony associated defendant with the murder charge in Los Angeles, nor was there any indication defendant was arrested on suspicion of murder.

For these reasons we find Marvel's testimony that he was presently assigned to homicide detail was not prejudicial to the defendant. The trial judge was correct in refusing to grant defendant's motion for a mistrial. The defendant was given a fair trial.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices