STATE OF MONTANA, Plaintiff and Respondent, v. ROBERT LEONARD AZURE, Defendant and Appellant.

No. 14191.
Submitted Jan. 30, 1979.
Decided March 16, 1979.
591 P.2d 1125.

Jackson & Kelly, Gregory A. Jackson, argued, Helena, for defendant and appellant.

Mike Greely, Atty. Gen., Allen B. Chronister, Asst. Atty. Gen., Charles A. Graveley, County Atty., argued, Helena, for plaintiff and respondent.

MR. CHIEF JUSTICE HASWELL delivered the opinion of the Court.

Defendant Robert Azure was convicted of the crime of attempted deliberate homicide following a jury trial in the District Court of Lewis and Clark County. He appeals from the judgment of conviction, denial of his motion for entry of a judgment of acquittal.

The events forming the basis of this case occured in and around the Corner Pocket-Diggins night spot in Helena during the evening of June 10, 1976.

Defendant and his friend Wayne Babcock drove to the' Corner Pocket in Babcock's pickup after work that day. They ate supper and began drinking. While defendant played the amusement machines and visited with the disc jockey, Babcock apparently continued drinking heavily. Defendant did not see much of Babcock during the evening prior to the alleged crime, except for occasional glimpses from time to time.

During the evening Babcock became extremely intoxicated and began to pick fights with Mel Hargrove, a patron who was a much

larger man. Babcock initiated some confrontations with Hargrove and was badly beaten on each occasion. Defendant had no knowledge of these events.

At about 10:00 p.m. Azure decided to go home and began looking for Babcock, his ride. His search was unsuccessful so he called his cousin who agreed to pick him up. During this call, defendant noticed a crowd outside which, unknown to him, was witnessing one of the fights between Hargrove and Babcock. After the phone call, defendant went outside where he first saw that Babcock, who was severely beaten and extremely drunk, was involved in the altercation. Moments later defendant saw Hargrove strike Babcock in the face knocking him to the ground.

From this point on, the evidence is conflicting as to what happened.

Defendant's version is that the assembled crowd was very hostile both to Babcock and him and became even more hostile as he approached Babcock. Defendant began looking for something to use to intimidate the crowd and permit Babcock to escape. Finding nothing nearby, defendant ran to Babcock's locked pickup, broke a wing window, and obtained a pistol from the glove compartment.

According to Azure, he then attempted to disperse the crowd by backing Hargrove, the apparent crowd leader, against a car by pointing the pistol at him. At that time Babcock had regained consciousness and while struggling to get up, fell against defendant. Hargrove grabbed for the pistol and a struggle ensued. During the struggle between Hargrove and the defendant, the pistol discharged and a bullet struck Hargrove in the chest.

Immediately thereafter Azure was apprehended and beaten by the crowd. Later he was taken to the police station, cleaned up, and photographed. In the meantime Hargrove had been rushed to the hospital where he was successfully treated for a gunshot wound to the heart.

The State's evidence differs in certain particulars. According to the State, Hargrove, who had struck Babcock only once, was attempting to leave the scene when defendant returned with the

pistol. The State's evidence indicated that Hargrove was not assaulting or threatening Babcock at that time but had already returned to the bar and was leaving the area. When confronted by defendant, Hargrove neither said or did anything menacing or insulting, but on the contrary simply raised his hands and backed away.

According to the State, defendant pointed the pistol at Hargrove, backed Hargrove up to where the fight had occurred, and asked Hargrove if he thought he was tough. The State contends that at the time the pistol was discharged, defendant had pulled free from Hargrove and there was no discharge during any struggle.

Prior to the trial, defendant had been arraigned on the charge of attempted deliberate homicide and had entered a plea of "not guilty". Defendant had given notice of his intent to rely on the defense of justification. Defendant had filed a motion in limine to prevent the State from introducing evidence of a prior conviction.

At the trial, Azure's defense focused on two interrelated propositions: (1) that his acts and conduct were justified in defense of himself, Babcock or both, and (2) that the shooting was accidental or caused by the intervention of a third person.

Defendant raises eight specifications of error in this appeal:

1. Denying admission in evidence of a photograph showing defendant's physical condition after he was taken in custody.

2. Admission of testimony regarding the victim's physical condition following the shooting.

3. Denial of due process to defendant by the State's knowing use of false and perjured testimony at the trial.

4. Refusal of defendant's proposed jury instructions Nos. 5, 19, 12 and 17.

5. Sufficiency of the evidence to support the conviction.

6. Denial of defendant's motion in limine to prevent the State from introducing evidence of defendant's prior conviction.

7. The County attorney's question to defendant suggesting that defendant had been involved in prior unrelated altercations.

8. The constitutionality of statutes under which defendant was charged, convicted and sentenced.

52

At the trial defendant sought admission in evidence of two police station photographs of defendant after he was taken into custody. One exhibit contained two photographs of defendant's back from the waist up; the other exhibit was two photographs of defendant's face. The District Court ruled one set of photographs admissible in evidence and the other inadmissible. There is no indication in the record that the photographs ruled admissible were subsequently offered or received in evidence.

Aside from this inconsistency in defendant's position, the excluded photographs were properly denied admission in evidence. The test of admissibility of such a photograph is whether its probative value is substantially outweighed by its prejudicial effect. *State v. Rollins* (1967), 149 Mont. 481, 428 P.2d 262. We note that the trial here was conducted prior to the effective date of the Montana Rules of Evidence. See Mont.R.Evid. 403 and Commission Comments.

In this case there is a dispute concerning the relevance of this evidence to show the crowd's hostility and thus the reasonableness and justification of defendant's acts and conduct. Assuming without deciding that the photographs were relevant, we hold that their relevance was substantially outweighed by their prejudicial effect. We note that testimonial evidence was admitted showing defendant's injuries after his beating by the crowd. The excluded photographs, while depicting these injuries more graphically than words, were prejudicial in attempting to inject an improper and unwarranted emotional impact into the case.

We have previously stated this principle in the following language; "Photographs that are calculated to arouse the sympathies of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions." *State v. Bischert* (1957), 131 Mont. 152, 308 P.2d 969. The photographs here had the potential of improperly swaying the jury on the question of its relevance to defendant's justification for the shooting, the reasonableness of his conduct, and the issues in the case. The District Court did not abuse its discretion in excluding the photographs.

Defendant assigns as error the admission of testimonial evidence concerning the wound and physical condition of the victim, Mel Hargrove. Defendant's objection to this testimony is based on its alleged inflammatory nature.

The admissibility of this evidence is likewise to be determined by weighing its probative value against its prejudicial effect. The rationale of *Bischert* and *Rollins* is as applicable to oral testimony as it is to photographic evidence. Here the oral testimony described a severe wound to the heart. Such testimony is relevant and probative to establishing an intent to kill, an element of the crime of attempted deliberate homicide. Sections 94-4-103 and 94-5-102, R.C.M.1947, now respectively sections 45-4-103 and 45-5-102 MCA. Its probative value clearly outweighs any prejudicial effect of this testimony.

Defendant next contends that the State knowingly used false and perjured testimony against him at the trial thereby denying him due process. Our review of the record indicates otherwise.

The State introduced the evidence of three eyewitnesses who testified that defendant and Hargrove struggled, defendant pulled free, and defendant shot Hargrove. Defendant sought to impeach their testimony with prior inconsistent statements in police reports which quoted these witnesses as saying the shot was fired during the struggle. According to defendant, this indicates the State knowingly used false and perjured testimony to convict him. We disagree.

The testimony at the trial consisted of more detailed descriptions of the shooting than the general statements the witnesses gave to the police. Any variance in their testimony amounts to no more than an inconsistency which they explained during their testimony. The jury resolved any consistency in their testimony by its verdict. Apparently the jury did not consider any inconsistencies sufficient to raise a reasonable doubt of defendant's guilt. The record simply does not support the allegation that the witnesses testimony at the trial was either false or perjured much less that the State knowingly used false or perjured testimony.

54

Defendant's offered instruction No. 5 told the jury that the State must prove the absence of justification beyond a reasonable doubt. The District Court refused this instruction.

The instruction is a correct statement of the law. *State v. Cooper* (1979), 180 Mont. 68, 589 P.2d 133; *Patterson v. New York* (1977), 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281. It is a verbatim statement of Montana Criminal Instruction Guide Instruction # 44.

The vice of the offered instruction in this case is that it is repetitive of other instructions which the District Judge gave the jury and under such circumstances would place undue emphasis on this aspect of the case. Court's instruction No. 2 advised the jury concerning the State's burden of proof and reasonable doubt; court's instruction No. 3 instructed the jury on the presumption of innocence of defendant; court's instruction No. 5 stated the elements of the offense of attempted deliberate homicide; court's instruction No. 12 instructed the jury on the defense of justification substanti-, ally in the statutory language of section 94-3-102, R.C.M. 1947, now section 45-3-102 MCA. The elements of the refused instruction were incorporated in other instructions given by the district judge. The District Court need not deliver repetitive instructions. *State v. Lukus* (1967), 149 Mont. 45, 423 P.2d 49. We find no error in refusal of defendant's offered instruction No. 5.

Defendant's offered instruction No. 19 stated:

"Conduct is the proximate cause of a result if without the conduct the result would not have occurred."

Defendant assigns refusal of this instruction as error.

This instruction is taken from instruction # 14 of the Montana Criminal Instruction Guide. The jury was adequately instructed on proximate cause, remote cause and accidental cause by court's instruction No. 14. Repetitive instruction need not be given *State v. Lukus*, supra. Accordingly we find no error here.

The District Court refused defendant's offered instructions Nos. 12 and 17 dealing with circumstantial evidence.

The focus of defendant's complaint is that his purpose in shooting Hargrove must be inferred from circumstantial evidence; therefore he was entitled to an instruction that the State's proof must exclude every reasonable hypothesis consistent with his innocence, citing *State v. Riggs* (1921), 61 Mont. 25, 201 P. 272; *State v. Pascgo* (1977), 173 Mont. 121, 566 P.2d 802.

The instructions to the jury must be read as a whole and if they fairly cover the issues and tender the case to the jury, they are sufficient. *State v. Brooks* (1967), 150 Mont. 399, 436 P.2d 91. If counsel is not limited by the instructions from fairly presenting his defense to the jury, he will not be heard to complain that the court failed to give particular nuance to his theory of defense. *State v. Collins* (1978), 178 Mont. 36, 582 P.2d 1179.

Although not in the exact words of defendant's offered instructions, the District Court adequately covered this subject in court's instruction No. 2 on reasonable doubt; No. 3 on the presumption of innocence; No. 6 on the necessity of proving joint operation of act and purpose beyond a reasonable doubt; and No. 15 on circumstantial evidence and inferences.

Defendant challenges the sufficiency of the evidence to support his conviction. He argues that of the four State's witnesses who testified that the shot was fired after the struggle, three were impeached by prior inconsistent statements; that the three eyewitnesses who testified in his behalf said the pistol discharged during the struggle. Because of this numerical superiority, defendant concludes the evidence is insufficient to sustain his conviction.

We disagree. The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Espelin* (1938), 106 Mont. 231, 238, 76 P.2d 629. Numerical superiority of witnesses is not the test of sufficiency of the evidence as the testimony of a single witness entitled to full credit is sufficient to prove any fact in this case. *State ex rel. Borquin v. Morris* (1923), 67 Mont. 40, 214 P. 332. The correct test is whether there is substantial evidence supporting the conviction. *State v. Lewis* (1976), 169 Mont. 290, 294, 546 P.2d 518. In reviewing the evidence, we

56

view the evidence in the light most favorable to the State, the prevailing party in the District Court. *State v. Pascgo* (1977), 173 Mont. 121, 566 P.2d 802. We have reviewed the evidence in the light of these principles and find substantial evidence to support the conviction.

Defendant further claims error in the denial of his prior conviction. At the time of trial such evidence was admissible to impeach him. *State v. Coloff* (1951), 125 Mont. 31, 231 P.2d 343. Mont.R.Evid. 609 eliminates this method of impeachment but its effective date was subsequent to this trial. In any event defendant is estopped from asserting this alleged error by the doctrine of invited error; the defendant himself introduced this evidence. *State v. Swazio* (1977), 173 Mont. 440, 568 P.2d 124; *State v. Turley* (1974), 164 Mont. 231, 521 P.2d 690.

Defendant assigns error to the State's asking defendant about a prior altercation. Defendant's objection was immediately sustained before the question was answered. Defendant contends the question itself unfairly prejudiced him by showing his pugnacious character before the jury.

We disagree that evidence of a prior altercation was inadmissible. *State v. LaVe* (1977), 174 Mont. 401, 571 P.2d 97; *State v. Williams* (1977), 174 Mont. 282, 570 P.2d 578. No evidence was admitted. The jury was instructed that it was "to be governed solely by the evidence introduced in the trial", that "statements of counsel are not to be regarded by you as evidence and you will disregard any such statements which are not supported by the evidence received at the trial"; and that in its deliberations "you will only consider the testimony of the witnesses upon the witness stand and such exhibits as are admitted in evidence. No juror shall allow himself to be influenced by anything which he may see or read outside of the evidence and exhibits received by the court during the course of the trial."

Some idea of the insignificance of the question to defendant can be gleaned from the circumstances. He neither requested an admonition to the jury nor moved for a mistrial at the time the ques-

tion was asked. After his objection to the question was sustained, defendant did nothing but proceed with the trial. It is true that he later moved for a mistrial on this basis as a part of multiple motions but under the circumstances this appears to have been an afterthought.

The trial judge likewise found no reversible error in the asking of the question. He reviewed this claim of error in defendant's motion for a new trial and denied it.

We hold that in the total context of the trial, the asking of this question did not constitute reversible error.

Finally, defendant attacks the constitutionality of the attempted statute, section 94-4-103(3), R.C.M. 1947, now section 45-4-103(3) MCA. The gist of defendant's attack is that the attempt statute is unconstitutional because it provides the same punishment for an attempt as for the principal crime.

Defendant has no standing to challenge the constitutionality of the attempt statute. He was sentenced to 15 years in the state prison with 10 years suspended after conviction of attempted deliberate homicide. The maximum penalty for deliberate homicide is death. Section 94-5-102(2), R.C.M. 1947, now section 45-5-102(2) MCA. As defendant did not receive the maximum punishment of death for the attempt of which he was convicted, he cannot question the provisions of the statute which were not applied against him.

We have previously expressed this principle in a recent case whose rationale is equally applicable here:

"One who is neither injured nor jeopardized by the operation of a statute cannot challenge its constitutionality. *State ex rel. City of Wolf Point v. McFarland* (1927), 78 Mont. 156, 252 P. 805. A defendant cannot question provisions of an Act which do not apply to his case. *State v. Johnson* (1926), 75 Mont 240, 243 P. 1073. The prosecutor in appellant's case did not ask for the death penalty . . . Defendant has no standing to make the contention." *State v. Booke* (1978), 178 Mont. 225, 583 P.2d 405.

Having reviewed all specifications of error and found them wanting, we affirm.

58

MR. JUSTICES DALY, HARRISON and SHEEHY concur.