No. 83-04

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

STATE OF MONTANA,

  Plaintiff and Respondent,

  -vs-

JAMES E. GRAY,

  Defendant and Appellant.

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable H. William Coder, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

  John E. Riddiough argued, Missoula, Montana

  For Respondent:

  Mark Murphy argued, County Prosecutor Services,
Helena, Montana

Submitted:  October 25, 1983

Decided:  December 23, 1983

Filed: DEC 23 1983

*Ethel M. Harrison*

Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Following a jury trial in the District Court of Ravalli County, defendant was convicted of criminal mischief, a felony, by reason of damaging a pickup with the purpose of defrauding an insurer. Defendant appeals from the judgment of conviction.

This is an appeal following the second trial of this case. This Court reversed the first conviction of defendant for procedural errors in admitting "other crimes" evidence. State v. Gray (Mont. 1982), 643 P.2d 233, 39 St.Rep. 622.

The present case is a retrial of defendant on the original charge before a different judge and jury. In essence, the State's evidence indicated that defendant considered his pickup a "lemon" and wanted to get rid of it; that his insurance on the pickup was being cancelled effective August 31, 1980; that on August 28, he intentionally drove the vehicle over a steep bank on the Skalkaho road to collect the insurance; that defendant and one Stephen Forsman concocted a story that defendant was forced off the road by a truck hauling a horse trailer; that thereafter the insurance adjuster determined that the pickup was not a total loss but was repairable; and thereafter one Terry Atkins vandalized the pickup with defendant driving Atkins to its location and acting as a lookout.

Defendant's evidence essentially consisted of a refutation of the State's evidence by impeachment of the State's witnesses together with defendant's testimony concerning the events in question. Basically, defendant testified that he left his trailer on the evening of August

-2-

in a rage to drive up to Skalkaho Falls to cool off; that he did not like Stephen Forsman and was mad at his step-daughter Leala for running around with Forsman; that they followed him in another vehicle and when he looked over his shoulder to see if they were still following him, his pickup went over the bank on the Skalkaho road and injured him; that the story about being forced off the road by a truck and horse trailer was entirely the invention of Stephen Forsman but he went along with it to protect Forsman. Defendant denied any complicity in later vandalizing his pickup and denied prior knowledge of cancellation of the insurance on his pickup.

Defendant advances three specifications of error:

1. Defendant is entitled to a new trial because of prosecutorial misconduct resulting in the admission in evidence of defendant's parole status.

2. The refusal of the court to instruct the jury on the lesser included offense of unsworn falsification to authorities, a misdemeanor, constitutes reversible error.

3. The admission of photographs of defendant's truck after it had been vandalized constitutes reversible error.

At a hearing in chambers on the first day of trial, the following colloquy took place between the opposing attorneys concerning defendant's parole status:

"MR. RIDDIOUGH: I would have one final request, Your Honor, and that would be with regards to the fact that Mr. Gray was on parole at the time that this offense was allegedly committed and I would request that the State caution its witnesses before testimony to not mention during their testimony anything regarding any prior convictions or any parole or parole revocation.

"THE COURT: Mr. Murphy?

"MR. MURPHY: Your Honor, in the trial of the first case Mrs. Townsend took great pains to sanitize the record of Mr. Gray's previous record. In fact, there is an indication on the part of James Bailey that he refused to answer a question put to him by Mrs. Townsend concerning what he did next. What he did next was contact Ralph Fisher, the Defendant's parole officer. We will again attempt to sanitize the record of any of those references and I will caution my witnesses and attempt to avoid any mention of that.

"MR. RIDDIOUGH: That's sufficient for me.

"THE COURT: Okay."

Leala Gray, defendant's stepdaughter, was called as a witness in the State's case-in-chief. During direct examination by the prosecutor, the following exchange took place regarding Stephen Forsman, another of the State's witnesses:

"Q. And so you proceeded back. Did you talk about anything else on the way back? A. Well, Steve was mumbling about, what am I going to do. I don't want to be in trouble. I don't want to get involved.

"Q. Did that make sense to you? A. Yeah.

"Q. How did you feel that he would be in trouble? A. The conversation at dinnertime would make him feel like he could possibly get in trouble.

"Q. With your father, with the authorities, what kind of trouble? A. Well, see, what we talked about at dinnertime was the trouble we've been having with the brown truck and the argument dad has with C&M Arrow and him being on parole and he knew that since dad wrecked the truck, that would affect his parole and that would bring in the law and Steve didn't like the law -- doesn't like the law."

Later, during the same examination of this witness by the prosecutor in the State's case-in-chief, the following exchange took place:

-4-

"Q. Okay. But you told this story to Officer Bailey because you didn't want to lie; is that right? A. Because I wanted to help Steve stay out of the scene of this whole thing. I guess the word I'm looking for is cover for Steve.

"Q. And what had Steve done wrong? A. Well, he told them that there was a truck and trailer involved that wasn't.

"Q. And he told them that because he was afraid he was going to get in trouble? A. Uh-huh.

"Q. For what? A. Because he knew about the argument my dad had with C&M over the truck and he also knew that my dad was on parole."

At the conclusion of the direct examination of Leala Gray, appellant moved for a mistrial in chambers outside the presence of the jury based upon the eliciting of the testimony of defendant's parole status by the prosecutor as indicated above.

The court denied the motion for mistrial but gave a cautionary instruction as follows:

"Ladies and gentlemen of the jury, you have received some testimony in this case that the accused, James Gray, was on parole at the time that the events occurred in the instant case.

"You are instructed to entirely disregard such testimony. The status of the accused is totally irrelevant and immaterial to any issue in the case before you and to consider such testimony in your deliberations would be violative of your oaths as jurors."

Defendant correctly points out that the prosecutor breached his promise to caution Leala Gray against mentioning her stepfather's parole status. Additionally, questions were asked on two occasions during Leala Gray's direct examination by the prosecutor that elicited the fact that defendant was on parole. Defendant argues that the

-5-

evidence that he was on parole at the time of the commission of the crime charged is evidence of other crimes that must pass both the test of admissibility and the test of proper notice before it can be introduced in evidence. State v. Just (1979) 184 Mont. 262, 602 P.2d 957; State v. Case (Mont. 1980), 621 P.2d 1066, 37 St.Rep. 2057; State v. Gray (Mont. 1982), 643 P.2d 233, 39 St.Rep. 622. Additionally, the prosecutor stated that he purposely did not talk to Leala Gray prior to her testimony, although he had promised to caution her against disclosing her step-father's parole status.

It is clear that misconduct by a prosecutor may form the basis for granting a new trial where the prosecutor's actions have deprived defendant of a fair and impartial trial. State v. Bain (1978), 176 Mont. 23, 575 P.2d 919; State v. Toner (1953), 127 Mont. 283, 263 P.2d 971; State v. Hart (Mont. 1981), 625 P.2d 21, 38 St.Rep. 133.

The prosecution admits that it breached its promise to caution Leala Gray against disclosing her father's parole status during her testimony. The prosecution argues that the State did not intentionally fail to warn Ms. Gray not to mention her stepfather's parole status; that the State did not purposely elicit from her the testimony concerning her stepfather's parole status; that any prejudice caused by the mention of defendant's status was eliminated by the court's cautionary instruction; and that defense counsel had more than an equal opportunity by virtue of numerous contacts with Leala Gray to prevent this error by warning her himself and that defense counsel also failed to warn her. The State also argues that the error was harmless in any event.

-6-

We find no excuse for the failure of the prosecution to warn Leala Gray not to mention her stepfather's parole status as the prosecutor had promised. However, we hold that under the circumstances of this case the District Court did not abuse its discretion denying the motion for mistrial for testimony concerning defendant's parole status. Rule 403, Mont.R.Evid., provides the exclusion of relevant evidence that may prejudice the jury. However, as recognized by the Commission on Evidence, "a key element of this rule is the discretion of the judge in deciding whether otherwise relevant evidence is to be excluded." In State v. Rollins (1967), 149 Mont. 481, 428 P.2d 462, this Court held that on questions of this nature, the "trial judge should have latitude of discretion." 149 Mont. at 484; see also, State v. Austad (Mont. 1982), 641 P.2d 1373, 39 St.Rep. 356; State v. Azure (1979), 181 Mont. 47, 591 P.2d 1125; Wallin v. Kenyon Estate (1974), 164 Mont. 160, 519 P.2d 1236.

As a matter of law, we cannot hold that the District Court abused its discretion in denying the motion for a mistrial. First of all, the judge stated that from observation of the jury, the impact of Leala Gray's testimony concerning the defendant's parole status was minimal. Also, the court cautioned the jury to disregard all evidence of defendant's parole status as it was irrelevant and immaterial which cured any resulting prejudice to him.

Furthermore, we recognize that prejudice will not be presumed; it must be established from the record that a substantial right was denied. Section 46-20-701, MCA; State v. Wells (Mont. 1983), 658 P.2d 381, 40 St.Rep. 127; State

-7-

v. Dupre (Mont. 1982), 650 P.2d 1381, 39 St.Rep. 1660. The test of prejudicial error requiring reversal is whether there is a reasonable possibility the inadmissible evidence might have contributed to the conviction. State v. Wells, supra; State v. LaVe (1977), 174 Mont. 401, 571 P.2d 97; also see, Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

Here, Leala Gray was a hostile witness for the State. She, unlike a law enforcement officer, had no motive to secure her stepfather's conviction. The State had no influence over her testimony. The evidence supporting defendant's conviction was substantial, if not overwhelming. Although there were many attempts to impeach various witnesses for both the State and the defendant during the trial, the defendant's version of events is simply incredible. It was refuted by witnesses Forsman, Atkins, Leala Gray and to some extent by the highway patrolman and the nurse at the hospital. We hold that the totality of circumstances shows no reasonable possibility that the inadmissible evidence might have contributed to defendant's conviction.

Directing our attention to the second specification of error, we note that the court refused to give defendant's offered instruction on unsworn falsification to authorities, a misdemeanor. We further note that an identical instruction had been accepted and given by the court in appellant's first trial.

Defendant argues that the District Court's instructions must cover every issue or theory having support in the evidence, and the inquiry of the District Court must only be

whether or not any evidence exists in the record to warrant an instruction. State v. Buckley (1976), 171 Mont. 238, 557 P.2d 283; State v. Bouslaugh (1978), 176 Mont. 78, 576 P.2d 261.

The crime with which defendant was charged reads as follows:

> "45-6-101. Criminal mischief. (1) A person commits the offense of criminal mischief if he knowingly or purposely:
>
> ". . .
>
> "(c) damages or destroys property with the purpose to defraud an insurer;"

The misdemeanor offense of unsworn falsification to authorities provides that a person commits that offense if with a purpose to mislead a public servant in performing his official function, he utilizes a writing in a manner by which to mislead. Section 45-7-203, MCA.

Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. Blockburger v. United States (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. Here, the elements of the crime of unsworn falsification to authorities are not required to be proved to establish the crime of criminal mischief.

To determine if one crime is a lesser included offense of another, the statutory elements of the respective offenses, not the facts of the individual case, control. Blockburger v. United States, supra. A simple reading of the two statutes makes it clear that the elements necessary to constitute the two crimes are separate and distinct,

having little in common.

Finally, defendant argues that he is entitled to a new trial because several photographs of defendant's damaged pickup after it had been vandalized were admitted in evidence. Defendant contends that as he had not been charged with committing the vandalism the photographs were evidence of other crimes. In substance defendant says that the evidence should have been excluded as its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury as set forth in Rule 403, Mont.R.Evid. Also see, State v. Azure (1979), 181 Mont. 47, 591 P.2d 1125; State v. Rollins (1967), 149 Mont. 481, 428 P.2d 462. Defendant argues that the probative value of these photographs was minimal as testimony regarding the vandalizing of the pickup was elicited from several witnesses in the case. Defendant argues that under State v. Bischert (1957), 131 Mont. 152, 308 P.2d 969, and Azure, supra, the evidence should not have been admitted and he is entitled to a new trial.

The State counters by admitting that the pictures do contain evidence of other crimes but that a proper notice of the same was given to the defendant as required by State v. Just (1979), 184 Mont. 262, 602 P.2d 957. The State argues that the pictures show the damage done in both incidents and they were admitted to corroborate the State's theory on motive of the defendant. They were not gruesome and would not inflame the jury.

In our view the pictures were properly admitted in the discretion of the trial court as proof of motive of the defendant and therefore their probative value was substantial

-10-

and was not outweighed by prejudice to the defendant.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices

Mr. Justice Daniel J. Shea, dissenting:

I dissent.  I would grant a new trial.

The trial court in effect granted a verbal motion in limine directing the State not to present evidence that defendant was on parole.  Although the State agreed that it would caution each of its witnesses not to maintain that defendant was on parole, the State deliberately chose not to talk to one of its witnesses before calling her to the witness stand.  This witness therefore, was not warned that she must not mention that defendant was on parole.  The witness twice (or three times) testified that defendant was on parole.  The admission of this evidence in violation of a court order excluding such evidence, is presumptively prejudicial.  The State has failed to demonstrate that this prejudicial evidence did not affect the outcome of the trial and therefore I would grant a new trial.

It makes no difference whether the State deliberately elicited the forbidden testimony or inadvertently did so.  The harm to the defendant is the same in either case.  It can hardly be denied that evidence that a defendant has already been convicted of a felony is prejudicial to his trial.  It was the State's burden, once this inadmissible and prejudicial testimony was admitted, to prove a lack of reasonable possibility that the inadmissible evidence contributed to the conviction.  Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.  The State failed in this burden and this Court, therefore, has the duty of reversing the conviction and ordering a new trial.

If the State had tactical reasons for not talking to witness Leala Gray before she testified, the State

nonetheless was not freed from its duty of warning this witness not to testify that defendant was on parole. The State still had a method by which this witness could be given the admonition. Just before the witness testified, the State could have asked for a court conference in chambers, and then the witness could have been called in to chambers, and, at the State's request, the court could have warned the witness not to testify that defendant was on parole. But this was not done and the defendant should not have to bear the burden of the State's omission by having to satisfy this Court that the prejudicial evidence was considered in the jury's deliberations. Rather, it was the duty of the State to show that it was not considered.

I further emphasize that the procedural context of the issue of defendant's being on parole, does not lead me to the conclusion that the prosecutor's conduct was as white as the driven snow. Defense counsel undoubtedly made the motion in limine because he knew that defendant's status as a parolee was bound to be injected into the trial. He knew this because of the record of the first trial and because of the investigation made before trial that indicated defendant's parole status was discussed. Therefore, before trial began, he made the verbal motion in limine.

When witness Leala Gray in a nonresponsive answer to the State, first mentioned that defendant was on parole, defense counsel did not then move for a mistrial, undoubtedly because of the fear of further emphasizing the forbidden evidence. But later in the witnesses redirect examination, she again mentioned that defendant was on parole. Again, defense counsel did not immediately move for a mistrial. Instead, he waited until her examination had concluded and then he moved

in chambers, for a mistrial because the forbidden evidence was placed before the jury. The trial court denied the motion but upon coming into the courtroom, gave the jury the cautionary admonition quoted by the majority. This cautionary instruction did not, however, cure the error, for the error was committed by the State. This error was presumptively prejudicial, and the State has not overcome this presumption of prejudice by a demonstration that the jury disregarded the fact that he was already a convicted felon.

When defense counsel made his verbal motion in limine to forbid the mentioning that defendant was on parole, the prosecutor expressed his displeasure, but nonetheless expressed that he would go along with the efforts to "sanitize" the trial just as the State had made efforts to "sanitize" the first trial. It appears, however, that in bringing in the forbidden evidence, the State was not quite as white as the driven snow.

The State knew that the witness most likely to bring in defendant's status as a parolee was Leala Gray, and she is the one witness who the State deliberately did not talk to before trial thereby avoiding warning the witness not to mention that defendant was on trial. Although the State asserts its noncomplicity in bringing the forbidden evidence before the jury, the context of the questioning leads me to believe that the assertion of innocence cannot stand.

The first question asked by the prosecutor appears to be innocent enough, and Leala Gray's answer also appears to be nonresponsive. Nonetheless, they told the jury defendant was on parole and the State could have prevented this from happening (or at least done its part in doing so) by moving

in chambers to have the court warn her not to mention that defendant was on parole. But the State chose not to do so and therefore violated the order compelling the State to warn each of its witnesses.

Later, in the redirect examination of Leala Gray, the prosecutor again asked questions of Leala Gray that no longer smack of innocence. The prosecutor asked the witness a second time about witness Stephen Forsman's fears that he would be in trouble.

> "Q. And he [Steve Forsman] told them [the authorities] that he was afraid he was going to get in trouble? A. Uh-huh.

> "Q. For what? A. Because he knew about the argument my dad had with C&M over the truck <u>and he</u> <u>also</u> <u>knew</u> <u>that</u> <u>my</u> <u>dad</u> <u>was</u> <u>on</u> <u>parole</u>."

This second series of questions was asked after the witness had already, during the first series of questions, disclosed that defendant was on parole. By this time, the prosecutor was on notice that the witness was likely to again mention that defendant was on parole if the same kind of questions were directed to her. The prosecutor could only expect that the same kind of question asked a second time would again elicit the same response--that defendant was on parole. And it did. For these reasons, I cannot look a the prosecutor's conduct as being as white as the driven snow.

Here the jury had evidence before it that defendant had already been convicted of a felony, for his being on parole could lead only to that conclusion. It was axiomatic that admission of the defendant's previous criminal record is prejudicial. See Rule 404(b), Mont.R.Evid., and the comments to that rule. The prejudice to defendant is increased where the evidence is admitted without any legal basis to support its admission. And that is precisely the

situation here. It makes little sense to then impose the burden on the defendant to prove that the inadmissible and prejudicial evidence adversely affected the outcome of his trial. But that is what the majority has done here. The majority punishes the wrong party for the infraction of the trial court's order that certain evidence not be given to the jury. The majority has imposed an impossible burden on the defendant, a result hardly in accord with sound and fair rules of trial and appellate procedure.

I next attempt to cut through the fog of the majority holding that admission of defendant's criminal record was harmless error. It is a difficult job because the fog is thick.

In reviewing defendant's claim of error, the majority purports to be guided by Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, in stating the "test of prejudicial error." The majority states that the test is "whether there is a reasonable possibility the inadmissible evidence might have contributed to the conviction." (Emphasis added.) And yet the majority did not analyze the evidence in light of this test to determine whether the admitted inadmissible and prejudicial evidence might have infected the jury's verdict. Instead, the majority seeks several reasons to justify its decision not to reverse.

First, the majority relies on the decision of the trial court refusing to grant a new trial. It is common, of course, for trial courts to refuse motions for new trials. And, once the trial court decided not to grant the motion he had to conclude that the inadmissible and prejudicial evidence had minimal impact on the jury. He couldn't very well say the evidence had a great impact on the jury and

still refuse to grant the motion for mistrial. I doubt, furthermore, that the trial court's observations in this situation should be given much weight. The jury did not have to drop its teeth before the trial court concluded the evidence would adversely affect their deliberations.

Second, the majority uses the standard ruling where a conviction is to be affirmed--the cautionary instruction given by the trial court cured all. Yet we all know that once the knife is plunged in, a cautionary instruction does not cure all. The point is that the State, through questioning its witness, put the evidence before the jury that the defendant was already a convicted felon. A cautionary instruction could not withdraw that information from the jury's mind.

Third, the majority engages in a remarkable reversal of roles when it holds that even though the evidence was prejudicial, the duty is nonetheless imposed on the defendant to show that the offending evidence contributed to his conviction. The only way he could do this in a normal case would be to produce jury affidavits, and this is normally an impermissible method of demonstrating prejudice. Moreover, once the jury convicted, jurors would be reluctant to admit that the inadmissible evidence played a part in their decision to convict.

Fourth, the majority concludes that Leala Gray was a hostile witness because she would have no motive to secure her stepfather's conviction. The fact is, however, that she and her boyfriend Stephen Forsman testified at the first trial, and neither of them were called as hostile witnesses. And neither were they called as hostile witnesses by the State in the second trial. The implication is that Leala

Gray purposely sought to produce a mistrial by testifying that her stepfather-defendant was on parole. But the evidence does not support that conclusion. A fair reading of the trial transcript indicates that the State was more than happy to get before the jury the fact that defendant was already a convicted felon. If the State did not want this information before the jury, it certainly did nothing to prevent it, and therein lies the evil of the majority holding. The State is given the benefit of its deliberate choice not to warn Leala Gray that she must not testify that the defendant was on parole. This choice flew in the face of the trial court's order.

Fifth and finally, we get to the catch-all, the apparent real justification for upholding the conviction. Apparently with Chapman v. California, supra, in mind, the majority declares: "The evidence supporting defendant's conviction was substantial, if not overwhelming." If the evidence of defendant's guilt was overwhelming, it was the duty of the majority to set forth all of that evidence to describe its overwhelming character. On the other hand, if the evidence of defendant's guilt was only "substantial," then the conviction cannot be affirmed by an application of the harmless error rule. Substantial evidence is required to affirm any criminal conviction challenged for legal sufficiency of the evidence, and substantial evidence is not enough to avoid a reversal based on application of the test set forth in Chapman v. California.

I would vacate the judgment and order a new trial.

Daniel J. Shea
Justice

Justice

- 18 -