No. 13910

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

CURTIS HAGFELDT,

Plaintiff and Respondent,

-vs-

BOYD C. MAHAFFEY, a/k/a BOYD MAHAFFEY,
and NANCY MAHAFFEY, his wife, GILBERT D.
WELLS and HERBERT M. SHERBERNE,

Defendants and Appellants.

---

Appeal from: District Court of the Eighth Judicial District,
Honorable Paul G. Hatfield, Judge presiding.

Counsel of Record:

For Appellants:

Scott, Linnell, Neill & Newhall, Great Falls,
Montana

For Respondent:

Dola Wilson, Great Falls, Montana

Cause submitted on briefs.

---

Submitted: January 6, 1978

Decided: MAR - 1 1978

Filed: MAR - 1 1978

*T. Thomas J. Kearney*
Clerk

Honorable Bernard W. Thomas, District Judge, sitting in place of Chief Justice Paul G. Hatfield, delivered the Opinion of the Court.

Plaintiff obtained judgment in District Court, Cascade County, for the recovery of money claimed to be due for the delivery of gravel and certain machine work, and for the fore-closure of a mechanic's and materialman's lien. Defendant appeals.

In the District Court this action and a prior one filed by Boyd C. Mahaffey and Nancy Mahaffey, defendants in this case against Curtis Hagfeldt, plaintiff, for removal of the lien and to recover damages for its filing, were consolidated for trial. At the trial only Hagfeldt's claim was heard and the action brought by Mahaffeys is not involved in this appeal.

Defendants Gilbert D. Wells and Herbert M. Sherberne were joined as parties to this action because at the time of the events in question they were vendors of the land here involved under a contract for sale to Mahaffeys as purchasers. The con-tract was paid off during the pendency of this action so Wells and Sherberne are not affected by the judgment and should be dis-missed as parties.

The District Court made general findings of fact that commencing on May 30, 1974, and ending on June 14, 1974, plain-tiff, at the special instance and request of Mahaffeys, delivered certain labor and materials to them, as follows:

| | |
|---|---|
| 76 loads of gravel @ $30.00 per load, | $2,280.00 |
| 7 hours of loader work @ $25.00 per hr., | 175.00 |
| Total due | $2,455.00 |
| That defendants paid the sum of | (1,000.00) |
| Leaving a balance due of | $1,455.00 |

The District Court further found that the labor and ma-terials were used on certain real property owned by defendants; concluded the lien was valid and subject to foreclosure, and entered judgment in accordance with its findings and conclusions.

The only issue presented on appeal is the sufficiency of

- 2 -

the evidence to support the findings, conclusions and judgment.

On the appeal of equity cases, this Court shall review all questions of fact arising upon the evidence presented in the record and determine the same. Section 93-216, R.C.M. 1947. If the evidence is not conflicting or if it preponderates decidedly against the findings of the trial court, this Court may make its own conclusions, but where there is substantial evidence to support the trial court, even though the evidence is conflicting, this Court will not disturb the findings. The credibility of witnesses and weight to be given their testimony is a matter for the trial court's determination. The evidence must be viewed in the light most favorable to the prevailing party in the District Court. Johnson v. Johnson, (1977), ____Mont.____, 560 P.2d 1331, 34 St.Rep. 101; Keller v. Martin, Jr., 153 Mont. 9, 452 P.2d 422; State ex rel. Nagle v. Naughton, 103 Mont. 306, 63 P.2d 123.

The transactions between the parties were conducted orally and occurred in the late spring and summer, 1974. The trial took place on February 10, 1977. By then time had taken its usual toll on the memory of the participants, resulting in uncertainty and confusion as to dates and details, and leaving the evidence unsatisfactory in some respects.

A review of the record shows that the parties are in substantial agreement on the following facts: Prior to May 30, 1974, plaintiff and Boyd C. Mahaffey held one or more discussions relative to plaintiff supplying defendant with a quantity of gravel to be delivered to a tract of land on which defendant planned to erect a shop building. These discussions culminated in an order by defendant for 10 loads of gravel at a price of $30 a load. Plaintiff owned a truck and he enlisted the aid of Gene Shumaker who also owned a truck and who had a lease on a gravel pit. Ten loads of gravel were delivered by plaintiff

and Shumaker on May 30, and on that date defendant paid plaintiff for those 10 loads by a $300 check. Shortly thereafter, defendant ordered a second 10 loads which were delivered by plaintiff and paid for by defendant's check in the amount of $300 dated June 7, 1974. At or about the time the second order was delivered the parties had a discussion about delivery of further gravel and use of a loader, following which plaintiff did deliver more gravel to defendant's land and did some work there with a loader. On July 7, 1974, plaintiff received a payment of $200 by a check given to him by Nancy Mahaffey, and at that time plaintiff gave Mrs. Mahaffey a statement showing delivery of 72 loads of gravel at $30, for a total of $2,160; 3½ hours building an approach at $28, or $98; grand total of $2,258, less credit for $800, balance due, $1,458. On August 16, 1974, defendant paid another $200 by check. Since then he has refused to pay more.

Defendant in his brief argues that the dispute is not about the amount of gravel delivered, but rather over how the gravel was to be measured and what defendant agreed to pay; that, while plaintiff maintains he delivered 76 ten-yard loads or 760 yards of gravel at $3.00 per yard, defendant claims that there were 26 to 30 loads at $30 per load. From this, it appears that defendant concedes that around 760 yards of gravel were delivered, but argues that delivery was made in 26 to 30 loads instead of the 76 loads as claimed by plaintiff. This would mean that the loads would have to average 25 yards or more each. There is substantial evidence against such a contention. Plaintiff's evidence shows that the two trucks used by him had capacities of 13.4 yards and 14 yards respectively; that each load delivered contained a good 10 yards, which was also the customary load size in the trade, and that the price was $3.00 per yard or $30 for a ten-yard load, which was the way defendant was billed by plaintiff.

As stated above, there is no disagreement about the first two orders which resulted in the delivery of the first 20 loads. Nor is it disputed that there was a third agreement for the delivery of more gravel. The difficulty arises on the terms of the third agreement. Defendant insists that he ordered only another 10 loads of gravel, plus some work with the loader. (No issue is urged relative to the loader work.) Plaintiff maintains that he was authorized to deliver sufficient gravel to finish the project defendant had in mind; that is, enough gravel to complete the driveway and to provide a base for the footings, foundation and slab floor of the shop building defendant planned to erect. Since the evidence on this issue is conflicting, we must determine whether the record contains substantial evidence to support the court's findings for plaintiff on this point.

The testimony submitted in behalf of plaintiff shows the following: At the first meeting of the parties defendant told plaintiff that he wanted to build a shop and needed gravel for a driveway. Defendant wanted to hold delivery of gravel down to 10 loads or 100 yards a week because he could not afford to pay more than $300 a week. Plaintiff had further conversations with defendant from time to time. Things were " * * * kind of planned as they went along * * *." Defendant gave plaintiff his ideas of what he wanted done; gave him the dimensions for the shop and where he wanted it built, and plaintiff went on from there. Defendant once changed the dimensions for the shop and that change required more gravel. As they were hauling defendant discussed with plaintiff what they were doing, where he wanted the gravel, how much he wanted covered. Sometime after the second 10 loads were hauled plaintiff talked to defendant about finishing the job. He told defendant that he and Shumaker had other work out of town, but that they would

- 5 -

haul in the balance of the gravel defendant needed before they left town and defendant could continue to pay at the rate of $300 per week. Defendant agreed. Plaintiff does not remember when this conversation occurred but thinks it was after either the second or third check was received from defendant. Shumaker was present one time at a meeting with defendant and plaintiff after the first 20 loads had been hauled. At that meeting the parties discussed finishing the job, with defendant to pay later, but he is not sure that defendant decided at that time that they should finish the job. Defendant was not advised each time plaintiff or Shumaker were going to deliver. He was there once when they brought in the trucks. Plaintiff met defendant at places other than the site, including once at defendant's shop and once at his home. At those meetings plaintiff asked whether defendant had been at the site and defendant said he had been, that it looked good, and for them to haul more. He apparently was satisfied and they went ahead and finished the job.

Plaintiff thinks he gave defendants estimates for the footings and slab, but because of the rough terrain it was difficult to estimate yards. Plaintiff furnished defendant only one statement, which was after 72 loads had been hauled. He went to the property with defendant after they had hauled gravel for the approach driveway and for the footings, foundation and slab. After looking it over, defendant mentioned that he would like a circular driveway, so plaintiff and Shumaker hauled four more loads for that purpose.

Defendant testified without contradiction that he requested plaintiff to do his hauling during working hours so that his wife could check the loads, but that plaintiff never did inform him when he was going to haul. Defendant further testified that he did not know that 76 loads had been hauled. As above stated, he admits that a large quantity of gravel was hauled,

but from markings on the ground he believed that no more than 30 loads had been hauled and that each load was a huge one. One reason he had plaintiff go ahead with the additional gravel was because he thought he was getting a good deal, with loads of 25 yards or more at $30 per load, but he insists that he ordered only 30 loads in all.

Without considering the documentary evidence, the oral testimony summarized above, although unsatisfactory from the standpoint of establishing definite times and terms, is sufficient to provide the substantial evidence necessary to sustain the court below. The documentary evidence consists of the four cancelled checks representing payments by defendant to plaintiff, a record of the loads hauled kept by Shumaker, and the statement which plaintiff delivered to defendant showing 72 loads delivered. When this documentary evidence is taken into consideration, some inconsistencies and contradictions appear.

Shumaker testified that his record was made each day when gravel was hauled. Plaintiff accepted the record as true and offered it in evidence. According to that record, the first 10 loads were hauled and paid for on May 30, as both parties agree. The record shows that the next gravel delivered was on June 2, during which day 26 loads were hauled. This appears contrary to the undisputed testimony that the second order was for only 10 loads and that plaintiff was not authorized to haul more until after the second order had been filled. An explanation of this apparent contradiction could be that after 10 loads had been hauled on June 2 the parties then had the discussion in which plaintiff claims defendant authorized him to continue hauling until he finished the job, and following the discussion, plaintiff and Shumaker hauled another 16 loads on June 2. There is no express evidence to this effect.

In fact, at the trial plaintiff could not explain why he hauled 26 loads on June 2, except to say that no gravel was hauled that was not authorized. Also, plaintiff testified that after the second 10 loads had been hauled, he went to defendant to collect; that he did not remember when defendant authorized him to finish the job; that it was either after the second or third check. The second check was dated June 7, 1974, and if the order to finish the job was not made until then, it would appear that no more than 20 loads had been authorized before June 7, 1974, although 39 loads had been delivered by that date according to Shumaker's record. However, a subsequent order to finish the job would cure this problem, since there is evidence to show that all of these loads were necessary for that purpose.

Another contradiction appears when the statement made out by plaintiff and delivered to Mrs. Mahaffey on July 7, 1974, is examined. This statement is dated June 10, 1974, and shows that 72 loads of gravel had been delivered as of that date, although Shumakers record shows only 51 loads delivered through June 10, with 13 loads delivered on June 11 and 8 loads on June 12. These circumstances were not brought out at the trial, so plaintiff was not called upon to explain them, and defendant has not raised this point in his argument.

Although the contradictions may raise doubts, we do not consider them sufficient to destroy the overall effect of the evidence which, when viewed in the light most favorable to plaintiff, is adequate to sustain the judgment of the District Court under the principles we have previously stated.

The judgment is affirmed.

_____
Hon. Bernard W. Thomas, District
Judge, sitting in place of Mr.
Chief Justice Paul G. Hatfield.

- 8 -

We concur:

_John Conway Harrison_

_Gene B. Daly_

_Frank I. Haswell_

_Daniel J. Shea_

Justices