No. 86-453

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

STATE OF MONTANA, ex rel., DEPARTMENT
OF HEALTH AND ENVIRONMENTAL SCIENCES,

        Plaintiff and Appellant,

  -vs-

THOMAS GREEN, d/b/a GREEN'S SALVAGE,

        Defendant and Respondent.

_____

APPEAL FROM: The District Court of the Fifteenth Judicial District,
In and for the County of Roosevelt,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Katherine J. Orr, Dept. of Health, Helena, Montana

    For Respondent:

        Thomas Green, pro se, Wolf Point, Montana

_____

Submitted on Briefs: March 12, 1987

Decided: June 29, 1987

Filed: JUN 29 1987

_____
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

The State of Montana ex rel. Department of Health and Environmental Sciences appeals an order in favor of Green's Salvage on a charge of failure to obtain a license for Green's motor vehicle wrecking facility and for failure to shield the facility from public view.

We reverse and remand.

There appear to be three main issues on appeal. They are:

1. Did the trial court err in finding that Green's Salvage business was not within "public view" and that certain portions of the junk yard are exempt from shielding requirements?

2. Did the trial court err when it failed to find a violation by defendant of a separate statute requiring him to obtain a license to operate or does defendant have an inalienable right to acquire junk vehicle property without a license and without shielding?

3. Does defendant's practice of not purchasing junk cars from insurance companies make a license unnecessary?

The defendant, Thomas Green, owns and operates a motor vehicle wrecking facility approximately 3 miles west of Wolf Point, Montana. From the record we have before us it appears that Green collected some junk cars but did not begin to significantly accumulate junk vehicles until 1978. At present the facility contains approximately 1,200 junk vehicles covering 35 acres of land. Green's is one of the largest junk vehicle yards in the State.

The yard complained of is situated at a lower elevation than and approximately 4,000 feet to the south of U.S.

Highway 2, a main access road into Wolf Point for interstate traffic from the west. It also sits to the north of and in close proximity to the Bureau of Indian Affairs Highway Route One, the so-called "Indian Highway," which angles around the junk vehicle yard to the west, south, and east sides of the facility. Both U.S. Highway 2 and the "Indian Highway" are paved public roads.

The Department contends that the wrecking facility should be shielded around its entire perimeter since the facility can be seen from both of the public roads from various directions. Green has been operating without a license for his motor vehicle wrecking facility since he began his operation. He submitted various license applications over the years but each application was found to be incomplete or contain unworkable solutions to the shielding requirement. In 1985, Green sent the required $50.00 fee to obtain his license which was also denied because the plan for shielding his facility was incomplete and inadequate.

Since 1982, Department employees, Larry Mitchell and John Geach, charged with implementing the Motor Vehicle Recycling and Disposal Act and Junk Yards Along Roads Act, worked with Green to help him come into compliance by assessing Green's yard on four different occasions and by providing detailed compliance advice.

They worked with Green for several years but he did not complete any of his various plans for complying with the shielding requirements. From letters dated September 30, 1982, June 15, 1983, April 3, 1985, and July 31, 1985, Green was advised that he was operating without a license and needed to obtain one. In the letters of October 19, 1982, June 15, 1983, April 3, 1985, and July 31, 1985, Green was advised that his application was incomplete or inadequate.

The Department appeals the judgment for Green which found his facility was not within public view from U.S. Highway 2; that the facility could not be considered to be an eyesore; and that Green need not obtain a license. There is some confusion in the record because the trial court appears to base its decision at least in part on the visual inspection of the premises. However, subsequent to entry of these findings, in its order of October 20, 1986, the Court agreed to limit the record to oral and written evidence not including the visual inspection since the court reporter did not prepare a verbatim transcript of the testimony given during the visual inspection by car. We look to the record as it was submitted to this Court.

The Department first argues the lower court erred in finding Green's Salvage business was not in "public view." It claims that the preponderance of the evidence shows that the defendant's business was within public view.

In a Preliminary Environmental Review dated July 1, 1985 the Department stated "[t]his facility is visible from two public roads; U.S. Highway 2 to the north and the Indian Highway to the east, south and west. All sides of this facility must be properly shielded from public view."

### U.S. Highway 2

The trial court order stated that by driving down U.S. Highway 2:

> Commencing where 6th Avenue North intersects with U. S. Highway No. 2, you go West on Highway No. 2 for 1.9 miles before Green's Salvage can be noticed. Then for a distance of 3.2 miles the salvage yard can be noticed, then for a distance of .6 miles it is out of view and then can be noticed again for a short distance of .2 of a mile. . . The facility could be noticed but not within "public view" as contemplated by ARM 16.14.202(1).

- 4 -

Section 16.14.202(1) of the Administrative Rules of Montana states:

> All junk vehicles, motor vehicle wrecking facilities, and county motor vehicle graveyards are required to be shielded from public view. Public view is any point six feet above the surface of the center of any public road from which the wrecking facility and junk vehicles can be seen.

Department employees Mitchell and Geach on a number of occasions viewed Green's Salvage from U.S. Highway 2. Both have testified that Green's Salvage is in public view from U.S. Highway 2.

Green neither admits nor denies that his facility can be seen from U.S. Highway 2. He testified that he failed to obtain a license because of certain individual property rights guaranteed by the Constitution and not because of the cost of shielding his facility. The defendant gave the following written response to an interrogatory posed by the Department:

> INTERROGATORY NO. 12: (a) Please state whether it is your position that your facility cannot be seen from Highway 2. (b) If you admit that your facility can be seen from any point on Highway 2, please describe whether you believe it should be shielded to some degree. (c) If you object to a shield from public view from Highway 2, please state the basis for your objection.

> ANSWER NO. 12: (a) What can be seen is not always comprehended and what is sometimes seen and comprehended is not always seen. At night, during blizzards and due to heavy fog my business cannot always be seen from Highway 2. (b) I do not believe shielding is necessary, neither do the approximately 2,500 people that signed the petition. (c) Prejudice on the part of the State of Montana over my choice of property to acquire and possess.

In the judge's chambers prior to trial, the Department contends Green described that all but 50 cars can be seen from U.S. Highway 2.

### The "Indian Highway"

The transcript does not disclose what the Indian Highway is, but a letter to the Solid Waste Bureau from the United States Department of the Interior attached to the Appellant's brief indicates that it is a public road built with federal funds and "in accordance with 25 Code of Federal Regulations, Part 170.8, free public use is required."

From the record it appears that the Green facility can be publicly viewed from the Indian Highway as claimed by the Department.

However, the lower court concluded:

> In addition the court finds that the Indian Highway was built after the wrecking facility and the law does not apply to the Indian Highway, and therefore that is not a consideration before the Court. If a person were offended by traveling the Indian Highway and driving by the facility, they could detour North approximately two miles on oil to Highway No. 2 and avoid passing by the facility without increasing the miles traveled to Wolf Point.

If the evidence preponderates against a trial court's finding, this Court may review the record to evaluate the evidence and make independent findings of fact. Hagfeldt v. Mahaffey (1978), 176 Mont. 16, 575 P.2d 915. Such a review of the record is proper in this case for the purposes of determining if it preponderates against the trial court's findings.

The testimony of the witnesses and the court's order found that the facility could be seen from both the Indian Highway and U.S. Highway 2. It is of no consequence to the enforcement of the Motor Vehicle Recycling and Disposal Act

- 6 -

and the Junk Yards Along Roads Act, that a person might have to have a certain eyesight acuity to identify it as a junk yard, that a particular highway was built after the wrecking facility was started, or that a particular highway was thought to be an unnecessary road. These factors are not relevant here.

The applicable laws were in effect since 1967 and apply to Green's business which substantially began in 1978. A review of the record discloses the preponderance of the evidence indicates defendant's facility is in public view. It is one of the largest facilities in the State. Defendant has known of the laws mandating shielding compliance for several years and has not brought his facility into compliance at any time during the growth and expansion of his business.

Defendant is not immune from the shielding regulations and is required to bring his facility into compliance with the applicable laws and regulations.

The second issue raised by Department is whether the trial court erred when it failed to find a violation of § 75-10-511, MCA, the separate statute requiring defendant to obtain a license to operate his motor vehicle wrecking facility. The trial court found that defendant was eligible to receive a license from the Department upon payment of the statutory fee because the shielding requirements did not apply to the defendant.

As we have found in the previous issue, the shielding requirements do apply to the defendant's facility.

These requirements are only one aspect of operating a motor vehicle wrecking facility within the mandates of the law. Section 75-10-511, MCA, states that any person operating a motor vehicle wrecking facility must obtain a license. It states:

(1) A person may not conduct, maintain, or operate a motor vehicle wrecking facility . . . without a license issued by the department.

. . .

(3) An annual fee of $50 shall be paid to the department for the license . . .

. . .

(6) The license expires on December 31 of the year issued.

The specific requirements for obtaining a license are set out in § 16.14.201, Administrative Rules of Montana which provides:

(1) Application for license to operate a motor vehicle wrecking facility shall be made on forms furnished by the department . . .

(a) All the information requested on the application form must be completed before the department can act on the application.

(2) When the completed application is received, the department is to approve the site location before a license will be issued.

(3) Before an application will be approved and a license to operate will be issued, the facility must be in compliance with the shielding requirements of ARM 16.14.202.

Defendant contends he has an inalienable right to acquire junk vehicles on his property without a license. While it is true that he does have certain constitutional rights to acquire and possess real and personal property, these property rights must be balanced with the rights of the public which the Department is mandated to protect.

This question of balance was addressed in State of Montana v. Cecil Bernhard (1977), 173 Mont. 464, 568 P.2d 136 as follows:

- 8 -

Article II, Section 3, 1972 Montana Constitution declares that the right to a "clean and healthful environment" is an inalienable right of a citizen of this state. Consistent with this statement and the case cited, we hold that a legislative purpose to preserve or enhance aesthetic values is a sufficient basis for the state's exercise of its police power in 69-6802 now § 75-10-511(1), MCA.

In sum, defendant's contention has been previously answered by this Court. It is clear that the Department correctly required the facility to obtain a license to operate whether or not it was exempt from shielding requirements.

We reverse the trial court on this issue and hold defendant must obtain a license to operate his facility in keeping with the applicable statutes.

The third issue is closely related to the licensing issue above. It is essentially a pro se cross claim by respondent who questions whether his practice of not purchasing junk cars from insurance companies makes a license unnecessary. Section 75-10-520, MCA, provides:

An insurance company settling an insurance claim on a damaged motor vehicle as a total loss less salvage may dispose of the motor vehicle at a motor vehicle wrecking facility only if it is licensed under the provisions of 75-10-511.

This statute and the licensing statutes are separate and independent requirements within the Motor Vehicle Recycling and Disposal Act which may be independently enforced. Respondent may not therefore use the fact that he does not purchase junk vehicles from insurance companies as a reason for not obtaining a valid license. A license is still required to operate his motor vehicle wrecking facility.

The respondent has failed to comply with the licensing requirements. He is subject to the provisions of the Act to

be determined by the trial court pursuant to §§ 75-20-541 and 75-10-542, MCA.

Reversed and remanded.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Chief Justice J. A. Turnage dissenting:

Appellant contends that he has a constitutional right to operate his motor vehicle wrecking facility without the statutorily-required license. This contention is not correct.

Section 75-10-501(7), MCA, is the statutory basis for appellant's problem and provides:

> "Public view" means any point 6 feet above the surface of the center of a public road from which junk vehicles can be seen.

I have some concern that this definition meets the constitutional test of due process when analyzed with the statutory purpose of beautification of the state. The statute is vague in that it offers no rational guide as to what public view may require, whether a pervasive intrusion upon the public view or a fleeting glimpse from a high point on the public road.

District Judge James Sorte applied common sense when he ruled that the Green facility was not within public view from U. S. Highway No. 2 as contemplated by the statute. A person may have been able to espy the vehicles from Highway 2; however, to have one's aesthetic senses offended thereby would require a bent for automotive voyeurism. Apparently, the over 2000 residents of Roosevelt County who signed a petition in support of Green's facility had no complaint.

The gravel country road referred to as the "Indian Road" apparently affords a better view of the facility and places it within the technical grasp of the rule and statute. However, in light of the purpose of the statute to enhance beauty, this may well be a de minimus intrusion on regulation.

Judge Sorte has wisely forecast the result that will surely follow in the event of a closure of the Green facility. The approximate 1200 vehicles located there, or their successors, would be strung out across Roosevelt County, probably resting on knolls and prairie dog mounds in clear public view.

The solution, not to be taken as a precedent, would be to affirm the District Court. This would be an application of judicial common sense and in the best interests of the citizens of Roosevelt County.

The claim of appellant that he has a constitutional right to operate the facility without a license is rejected.

In all events, the parties to this cause are encouraged to continue to work out a rational solution.

_____
Chief Justice


Mr. Justice L. C. Gulbrandson, dissenting:

I join in the dissent of Mr. Chief Justice Turnage.

_____
Justice



12